RAYMOND LESTER STURGIS *v.* STATE OF TENNESSEE.

(*Nashville,* December Term, 1955.)

Opinion filed March 9, 1956.

Petition to Rehear denied June 8, 1956.

ANTHONY A. ASPERO, of Memphis, for plaintiff in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Sturgis was indicted and convicted for the violation of the Age of Consent statute, Williams' Code, Section 10786, T. C. A. 39-3706. The punishment as fixed by the jury was a penitentiary sentence of 10 years. From this judgment the plaintiff in error has seasonably appealed, briefs have been filed and arguments heard and we now have the matter for disposition. There are numerous assignments of error which will not be taken up seriatim by us but all will be answered in the course of this opinion.

The injured female was a young girl thirteen years of age at the time of trial. Her picture is carried as an ex-

hibit in the record and shows her to be exceptionally well physically developed. She testifies in a very forceful and straightforward manner. According to her testimony she became acquainted with Sturgis shortly after the beginning of the school year in 1954. She says that he was a taxi-cab driver and that he first spoke to her at the corner of Harbert and Cooper streets where his cab was parked, which was about four or five houses down the street from where she lived. After this first meeting Sturgis hauled the young lady in his cab on a number of occasions and, according to her, never charged her any fare. On one occasion he took her into Overton Park, in what appears to have been a secluded area (pictures are filed as exhibits with the young lady standing by a car of policemen which shows this area) and there committed the offense for which he was charged. She says that after the commission of the act he took her back near her home and that he gave her seventy-five cents. It might be noted here that all the times that he admits that he had her in the cab never did he drive his cab up in front of her house and let her out—it was always at the corner some little distance from her home. This first act took place according to her sometime in September, 1954. She says that she rode with him several times after that but the act was not committed again until in the early part of April, 1955 when Sturgis took this young lady to a place near Katz Drug Store and there repeated the offense. She says that he gave her about $1 at this time.

Shortly after this April meeting someone (of course the record does not show) called the principal of the school and upon the information that was given the principal of the school Sturgis was arrested and two officers went to the home of the young lady and, after

talking to her parents, she was taken to the juvenile home and talked to for some time by them. A woman matron at the juvenile home took her to a physician at one of the local hospitals in Memphis on April 26, 1955, and had her examined by this physician. This physician plainly says that at that time she was not a virgin and that an entrance could be made in her vagina with two fingers without causing any appreciable pain. While these detectives were talking to this young lady she told them about having relations with Sturgis on the two occasions above enumerated. The police took a statement from her and also after the arrest of Sturgis they took a statement from him in which he denied that he had committed the offense.

In this statement given by Sturgis to the police he admitted that he had transported this young lady to school a number of times but insisted that she had paid him the regular fare on each occasion. He testified that she had put in special calls for his cab and that after she had been riding with him for some time she started to become familiar.

He testified on the witness stand that he was sexually impotent and denied having any relations with the young lady in question. He was corroborated in his testimony as to his sexual impotency by his wife who testified that he was unable to satisfy her in this regard.

In his testimony he denied emphatically that he had ever had this young lady out in his cab near Katz Drug Store, while in his statement that he gave the officers on the day of his arrest he says:

"Q. Mr. Sturgis, can you remember any other time that Edith has ever ridden in your cab? A. Yes, sir. One other time, about two weeks ago, which was on a Saturday, I was parked in my cab on the

east side of Cooper at Harbert and Edith came up
and said to me that her mother was at Katz Drug
Store, and that she wanted to go over there, and I
took her over there in my cab.''

This statement of the plaintiff in error absolutely jibes
exactly with what the injured female had said about the
occasion of her having intercourse with plaintiff in error
in April, 1955. This statement of the plaintiff in error
was given to the officers, as he says, about two weeks
after.

In this same statement which the plaintiff in error
gave he makes this very striking and, to our minds, con-
demning statement. He was asked:

''Q. Mr. Sturgis, did anything out of the ordinary
happen while she was getting in the cab or while
she was in the cab on the way to school? A. Yes, sir.
I don't know if you would call it out of the ordinary
or not, but it was accidental, but when Edith got
in the cab, I had my arm lying on the back of the
front seat, and she leaned over towards the front,
rubbing her breasts against my arm.''

Of course if a man that had merely acted as a taxi driver
and driven a fare for pay from one place to another he
would not be making this kind of an accusation about a
little thirteen year old girl who had been riding with him.

The plaintiff in error had been suspected on two or
three other occasions of conducting himself improperly
with little girls around Memphis. This being true the
officers had taken his picture when he had been accused
of this with these other children prior to the occasion
under which he had been arrested here. When the officers
were examining the little girl in the instant case about
these acts they showed her a picture of the plaintiff in
error which had been taken before and she identified him

as the person who had committed these acts. He was also put in a line-up with three or four other men and she picked him out of this line-up as the person who had committed the acts. He was questioned on cross examination somewhat at length about what he had said and done in these other instances and without objection he answered these questions. Of course he tried to deny any improper relation with these other little girls but the similarity of his answer to the one above quoted about the girl rubbing her breasts on his arm on the back of the seat was identical. He made this same statement in reference to a charge which had been made against him before, in reference to these other little girls. On page 236 of the transcript he says:

"A. Well, I hauled some little girls and boys from school, so when they got out of my cab, one of them struck her breasts against my arm when I opened the door."

In his testimony here he tells of an incident of when the little girl in question, in the instant case, had called for his cab and he refused to go. He says that the cab company had sent another man out there and that the girl refused to ride with this other man. There is considerable proof taken apparently trying to find who this cab driver was. The other cab driver apparently could not be found. Another significant thing about his testimony is that he says:

"I just decided I would quit making those specials. The next time she called me on another special, I refused it."

He is there saying that he refused to haul the little girl who is accusing him here, anymore. And again he says:

"Just because I didn't care anything about hauling her".

This is the reason he refused to go anymore. Then he says again:

"Q. Now, Mr. Sturgis, is that the only reason for your not wanting to receive any more special calls from this girl?

"A. No, it was on account of her character. I didn't like the way she jumped around in the back of the cab, flurrying her dress."

All of this, that we have above referred to, was after he had stated many times that he had hauled the young lady and stated definitely how much money he had received for each haul. Obviously these statements, that we have quoted above, clearly indicate a guilty knowledge and are of great corroboration of the statements of the injured female herein. The statements that he made which are quoted above were not objected to. Since they were made by him and not objected to they are competent and must be given their natural probative effect as if in law they were admissible. *Casone* v. *State,* 193 Tenn. 303, 246 S. W. (2d) 22.

■ Obviously from what we have said above the primary insistence on this appeal is that the testimony of the injured female is not sufficiently corroborated. The first seven assignments of error are addressed, in the main, to this insistence one way or another. In addition to the above enumerated acts of corrobation are the statements made by the detective who testifies without objection as to how the young lady related this transaction to him—as to how these things happened on these different occasions. Such statements of the detective are admissible as corroborative of her testimony. *Curtis* v. *State,* 167 Tenn. 430, 70 S. W. (2d) 364.

■ This Court forty-odd years ago speaking of the quantum of evidence necessary for corroboration in a

case of this kind has very clearly and simply laid down the rule that must be followed in such cases. In *Bledsoe* v. *State,* 135 Tenn. 143, 185 S. W. 1073, this Court said:

"This proviso [speaking of the statute here invoked Code 10786 about corroboration] is complied with if there is adduced sufficient evidence of another than the female which fairly tends to convict the defendant of the commission of the crime; and this evidence may be in relation to material and substantive fact or facts which may lead the jury to the finding that she is worthy of credit. * * *

"Further, the corroborative evidence need not be direct and positive, in the sense of being sufficient to convict, independent of that of the female alleged to have been debauched, but simply as to such facts or circumstances as tend to support the female in her testimony upon fact or facts essential to constitute the offense. * * *

"The legislative policy of this state, as evidenced by several enactments, has been consistently progressive in respect of the punishment of offenses of this character; *and we believe that sound judicial policy dictates that the prodedure under the acts should not be too stringent in respect of the proof requisite to support the female.* The statutes were intended to safeguard the young womanhood of the state, thereby protecting the social fabric at its base; and we feel no inclination to declare a stricter rule than the one above, touching proof thereunder." (Emphasis ours.)

Of course from the very nature of the crime it would be generally almost impossible to find someone that actually saw the act committed. Thus the courts generally hold, though every case depends upon its own bottom, that

is, the facts introduced in that case, that if there is some material fact or circumstance which is independent of the statement of the prosecutrix· that it is sufficient. It is said in 44 Am. Jur. at page 973, under the title of ''Rape'' that:

''It is sufficient if she is corroborated as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn.''

■ After very carefully and painstakingly reading the record herein and the statements of the young lady along with those of the plaintiff in error we are satisfied that she· is telling the truth. Her testimony rings that way and when we take this testimony which is clearly corroborated by the statements of the plaintiff in error in·various and sundry instances, many of which we have quoted above, we feel that this corroboration is convincing and should be sufficient to sustain the verdict herein.

■ Complaint is made as to the introduction of these pictures of this car taken out in Overton Park on the road by· the woods with the little girl there. We think that the photographs show the place and the little girl and are competent. The only materiality of these pictures is to show that the offense was committed in a wooded section of the park. The fact that the police car and not the cab was there makes no difference.

■ There are numerous assignments of error which are predicated upon the remarks made by the assistant district attorney in his opening argument to the jury. We have carefully read this statement and have noted the sincere objections and assignments thereto. Some of the remarks or statements made are somewhat intemperate but we do not think that under the circumstances

and the heat of trial and in the argument of the case that they are in any way prejudicial to the plaintiff in error. We cannot see how any of these remarks would in any way or could in any way influence the verdict of the jury to such a extent that there would be prejudicial error. To say the most, under the Harmless Error Statute, Williams Code, 10654, T. C. A. Sec. 27-117, any error that they might cause would clearly not be prejudicial. The jury has heard the evidence, they saw the witnesses and they knew that counsel on each side naturally would have some latitude on their comment on the trial and the evidence. The jury though were well charged by the trial judge and we think there is no reversible error committed.

After a thorough consideration we are satisfied that there is no error in this record and the judgment below must be affirmed with costs.

NEIL, Chief Justice (dissenting).

I am constrained to dissent from the majority opinion upon the ground that there is no corroboration of the violated girl, Edith Ailene Harris. The testimony of the police officers as to statements made to them by her regarding her alleged relations with the defendant, which were not made in the presence of the accused, are not corroborative of the girl. It is not insisted that the statements made by her to these officers were part of the *res gestae*. In fact, they were not. I fully agree that the accused was in company with the girl on probably too many occasions, driving her to school in his taxicab and to one or two other places, but this shows only an opportunity to commit the crime. While the testimony of the doctor who examined her and whose testimony is referred to in the majority opinion, is convincing evidence that the girl had had sexual intercourse, it is no corroboration,

unless it is proper to base an inference upon an inference. We are not justified in holding that it corroborates her statement that she had such relations with the defendant.

I readily concede that corroborating evidence as to the act of intercourse is difficult to establish, but this is no justification for sustaining a conviction in the absence of such evidence.

The case was well tried in the Criminal Court, and the record has been exhaustively reviewed by Mr. Justice Burnett, for whose opinion I entertain a very high regard, but after a full consideration of the record I cannot agree to affirm the judgment of the trial court.

TOMLINSON, Justice, concurs in the foregoing dissent.