JOHN H. BUCHANAN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

454 S.W.2d 178.

Court of Criminal Appeals of Tennessee. Feb. 11, 1970.

Certiorari Denied by Supreme Court May 4, 1970.

Hugh W. Stanton, Jr., Robert A. Tillman, Walker Gwinn, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., Robert K. Dwyer, Executive Asst. Dist. Atty. Gen., William D. Haynes, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

RUSSELL, Judge.

John H. Buchanan was convicted of murder in the first degree and sentenced to ninety-nine years in the

penitentiary by trial in the Criminal Court of Shelby County. He has perfected this appeal in the nature of a writ of error.

Several assignments question the sufficiency of the convicting evidence. We shall, therefore, briefly set out a resume of the State's evidence, which evidence is before us now after having been accredited by the jury and the jury verdict having been approved by the trial judge.

On the evening of April 15, 1968, Gaia's Liquor Store on Beale Street in Memphis was robbed at gunpoint and its operator, Mrs. Rosalind Gaia, shot to death instantly by a pistol shot to the head. Three persons were said to be involved in the robbery. A young man named L. T. Austin, a teen-aged girl named Linda Ann Forrest, and the defendant. Austin admitted that he was the actual killer in his testimony, and that he was accompanied by Linda Ann Forrest; but he (a defense witness) said that they were the only two involved. He admitted giving a detailed statement to police in which he named Buchanan as a third participant. Linda Ann Forrest testified for the State, and named Buchanan as a participant. One uninvolved eyewitness, Alonzo Hayes Williams, identified Buchanan as the participant who was an armed guard and lookout at the front door. Another witness, Dave Fondren, testified that the crime was committed by two men and a woman, and that the lookout had a heavy mustache. Although he could not positively identify Buchanan, the description fit and he positively involved two men and a woman. Atkin Charles Riggins, a customer in the store at the time of the robbery-murder, testified that two men and a woman were involved. Austin, the admitted killer, and the defendant were together

when questioned by police later the same evening. There was other evidence tending to link Buchanan to the crime. About the only substantial evidence that he was not guilty came from the testimony of Austin, the admitted trigger man. Buchanan did not testify.

We have carefully examined all of the evidence, and certainly the State's proof was sufficient to support a conviction and the proof of innocence does not preponderate over the proof of guilt. Therefore, the assignments going to the weight and sufficiency of the evidence are overruled. Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; Troglen v. State, 216 Tenn. 447, 392 S.W.2d 925; Williams v. State, 218 Tenn. 359, 403 S.W.2d 319.

The admission into evidence of Buchanan's oral statement is assigned as error. This statement was largely exculpatory, and was given after he had been read a rights card which contained the *Miranda* warnings, and after he had indicated to the officer that he understood his rights and was willing to make a statement. Nothing in the record suggests that Buchanan was not advised of or did not understand his rights. Furthermore, the admission of the statement into evidence was not objected to. This forecloses the question. Casone v. State, 193 Tenn. 303, 246 S.W.2d 22; Harless v. State, 189 Tenn. 419, 225 S.W.2d 258; Sturgis v. State, 199 Tenn. 558, 288 S.W.2d 434; Harper v. State, 206 Tenn. 509, 334 S.W.2d 933.

The fact that the witness, Alonzo Williams, was permitted to testify that he picked Buchanan out of a line-up is assigned as error. No attorney for Buchanan

was present at the line-up. He had been advised of his right to have an attorney present, and had signed a card which purported to voluntarily waive this right. We hold that this was a sufficient waiver of counsel in this case. The conduct of the line-up clearly comported with due process. A photograph of the line-up was introduced upon the trial, and the procedure detailed. There was nothing suggestive or unfair appearing. We hold this assignment to be without merit.

■ Plaintiff in error contends that the trial judge permitted the State's attorney to create a highly prejudicial inference that Buchanan refused to respond to inculpatory statements of his accomplice, made in his presence. Lt. Linville testified that he had secured a written statement from Linda Ann Forrest. We quote the record thereafter, as follows:

> "Q. And, was that written statement in the presence of this defendant, John Henry Buchanan, and in the presence of the co-defendant, L. T. Austin?
>
> "A. It was.
>
> "Q. Following the written statement signed by Linda Ann Forrest, what did you do next?
>
> "Mr. Gwinn: Objection. May I approach the bench?
>
> "The Court: Alright.
>
> "Mr. Gwinn: If the jury is due to eat at 12:30, I suppose that we could excuse them now.
>
> "The Court: Yes, we will stop at 12:30, you might approach the bench though, just for a moment here on your objection.

(Out of Hearing of Jury)

"Mr. Gwinn: These microphones do not pick up very well. It appears that it may, that the next question, they have done everything but ask him if the defendant refused to say anything.

"Mr. Haynes: I have'nt asked that question.

"Mr. Gwinn: No, but he's getting right to it.

"Mr. Haynes: No, sir, I don't intend to ask that question.

"Mr. Gwinn: Well, it looks as if you have gone as far as you could possibly go with it.

"Mr. Haynes: I have gone as far as I think we are entitled to go and I don't intend to proceed any further.

"The Court: Alright.

(Trial Resumes)

"Q. Lt. Linville, what did you do next?

"A. After the completion of the statement by Linda Ann Forrest?

"Q. Yes, sir.

"A. I asked L. T. Austin and John Henry Buchanan if they had an answer to her statement.

"Mr. Gwinn: Objection.

"The Court: Sustained.

"Q. Did you go on to take a statement of one—Your Honor, we ask that the jury be asked to disregard that question and that answer.

"The Court: Gentlemen, you are instructed by the Court to disregard the last question to this witness, Officer Linville, and the answer that he gave. Consider it for no purpose whatsoever, it's stricken from the record. It is not to be considered by you in any respect, manner, shape, form or fashion. Alright.

"Q. Perhaps I didn't phrase the question properly. Lt. Linville, did you after taking the statement of Linda Ann Forrest, thereafter take a statement of the defendant, L. T. Austin?

"A. I did."

Several points are worthy of note. First, Buchanan had not claimed his right to remain silent, and had given a complete (though mostly exculpatory) statement without ever asking that his interrogation cease and he be allowed to commence to exercise his right to remain silent that he had previously expressly waived. Therefore, although it was assumed by both sides and the trial Court that it would be error to permit evidence of Buchanan's silence in the face of an inculpatory confession by an accomplice, we certainly recognize a question as to the admissibility of such evidence under this record. Such tacit admissions have been a firm part of our pre-*Miranda* law, and it is doubtful that *Miranda* changed the rule where the silent defendant had previously knowingly and voluntarily waived his right to remain silent and had talked fully without ever re-claiming the right expressly or by clear implication. However, we need not pass upon that question.

Here, nowhere does the record before the jury show that Buchanan did not respond, or refused to respond, or

was silent. An objection was promptly sustained. Further, the State's attorney himself asked for and received a full instruction from the Court that the jury disregard the question and answer. It is obvious that the State's attorney was operating in good faith, and that the unexpected answer of the witness which came close to what all considered to be a forbidden area was not deliberately elicited. The "forbidden" area was never actually gotten before the jury. We cannot agree that it was, by inference, as is contended. To make this point, the testimony immediately following showed that Austin did not stand mute. It is not a natural sole inference from this proof that Buchanan then stood mute. Further, upon State motion, a clear charge to exclude was given. This admonition was effective to purge this evidence from consideration by the jury, even if it were incompetent, since we hold no real doubt as to the effectiveness of the judicial warning. Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237; Pryor v. State, 217 Tenn. 695, 400 S.W.2d 700; Clarke v. State, 218 Tenn. 259, 402 S.W.2d 863; Blankenship v. State, 219 Tenn. 335, 410 S.W.2d 159.

The plaintiff in error next contends that the State's attorney prejudiced him by remarking in the presence of the jury that one of Buchanan's counsel represented Austin, another person involved in the crime and who was then being cross-examined after having testified for the defendant. What happened was that Mr. Tillman announced to the Court that since he represented Mr. Austin and hence had a confidential relationship with him that he would not participate in his examination as a defense witness for Buchanan, leaving

that task to Mr. Gwinn. Both gentlemen are assistants to the Public Defender. When General Dwyer was cross-examining Austin, Mr. Tillman felt that General Dwyer was improperly interrupting the witness, and this dialogue appears:

"Mr. Tillman: Mr. Dwyer, let the man get through answering the question, now.

"General Dwyer: You represented Austin, I thought you weren't going to—(interrupted).

"The Court: We'll (sic) give him time, a little more time."

Subsequently, Mr. Gwinn moved that the jury be instructed to disregard General Dwyer's statement as to who was representing Austin, and the Court ordered it stricken. There is no merit to this assignment.

█ Finally, error is urged with respect to the State's final jury argument. We have carefully reviewed the objected to argument, and hold that the trial Court properly sustained all timely objections and did not abuse the considerable discretion which he has in keeping argument within permissible bounds. White v. State, 210 Tenn. 78, 356 S.W.2d 411. Where an improper line of argument is made to a jury, it will be considered harmless where the trial judge has properly sustained objections to the argument. Biggers v. State, 219 Tenn. 553, 411 S.W.2d 696; King v. State, Tenn.Crim.App., 430 S.W.2d 810.

We have carefully reviewed this record and are convinced that the defendant received a fair trial by a Court commendably sensitive to his every right, and that his

guilt is manifest and his punishment appropriate. We affirm the judgment.

HYDER and MITCHELL, JJ., concur.