**James William FRENCH, Plaintiff in Error,**

**v.**

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

Sept. 5, 1972.

Certiorari Denied by Supreme Court
Dec. 18, 1972.

Dale C. Workman, and Walter B. Johnson, Knoxville, for plaintiff in error.

David M. Pack, Atty. Gen., J. B. Hagler, Jr., Asst. Atty. Gen., Nashville, Ralph Harwell and James L. Jones, Asst. Dist. Attys. Gen., Knoxville, for defendant in error.

## OPINION

OLIVER, Judge.

Represented by appointed counsel, French was convicted in the Criminal Court of Knox County of arson, under an indictment charging him with burning a dwelling house belonging to H. E. Hines Company, Inc., which was rented to and occupied by his brother Roy French, and was sentenced to imprisonment in the penitentiary for not less than three nor more than 15 years. He has perfected an appeal in the nature of a writ of error to this Court.

By his first Assignment of Error, the defendant challenges the sufficiency of the evidence, insisting that it preponderates against the jury's verdict and in favor of his innocence. We summarize the material evidence. On the afternoon of September 22, 1971, the defendant was convicted in the Knox County General Sessions Court of breaking into and entering the house occupied by his brother Roy and was sentenced to 11 months and 29 days in the Knox County Workhouse, which was suspended upon the condition that he stay away from his brother's house. Roy French had brought the charges against the defendant and testified that as he and the defendant were leaving the courtroom that afternoon, the defendant said to him, "I'll get even with you for this."

Roy French testified further that about 9:00 o'clock that night, he was in the bathroom which was in the rear of his house adjacent to the kitchen; that the bathroom had two doors, one leading to the kitchen and the other leading to the back yard; that the latter door was open and through it he saw the defendant walk from an alley into the back yard; that the defendant stopped some 12 to 15 feet from the house, took a match out of his pocket, laid something on a beer can he was carrying, lit it and threw the can into the coal house which was connected to the kitchen; that an explosion was then heard and immediately the coal house was on fire; and that by the time the fire department trucks arrived, the coal house, the entire rear of the house and the kitchen roof had burned down, causing damage estimated to be around $400.

Roy French's wife testified that shortly before the fire, by the street light she saw the defendant with a beer can in his hand standing at the nearby corner of Hannah Avenue and Hines Street; that he remained there a few minutes and then walked down Hines Street and that their house was on fire within five to 10 minutes later.

Albert Hickson, a neighbor of Roy French and an acquaintance of the defendant, testified that he saw the defendant standing behind some bushes holding a beer can; that the defendant then went into an alley and disappeared around another neighbor's coal house; that shortly thereafter the defendant ran back past him, whereupon he stepped out into his back yard and saw the fire.

Captain Clift, a veteran in the Inspection Bureau of the Knoxville Fire Department, testified that upon investigation made while the fire trucks were still at the scene he found a few pieces of burnt paper and two blackened beer cans in the coal house, and gave it as his opinion that the fire had been set and that it started about the center of the coal house.

Denying that he set the fire to his brother's house, the defendant interposed an alibi, testifying that after leaving the courtroom on September 22nd he went to the Star Bar and stayed there until 8:00 p. m.; that he then went to the Rainbow on Western Avenue and stayed there until 10:00 o'clock that night and then went to the Golden Sun to get something to eat and was arrested as he started to leave that establishment; and that he was not at or around his brother Roy's house that night; and that he did not harbor any ill feelings toward him for bringing the charge against him on which he was tried that day in the General Sessions Court.

James Woodrow Williams testified as a defense witness that one night in September of 1971 around 7:30 or 8:00 o'clock he saw the defendant at the Star Bar, and that the defendant told him he had just got out of jail.

The defense of alibi presents a question for the determination of the jury, as the sole and exclusive judges of the evidence and of the weight to be given to the swearing of each and every witness in the case. Hancock v. State, 1 Tenn.Cr.App. 116, 430 S.W.2d 892; Jones v. State, Tenn.Cr.App., 452 S.W.2d 365. Having been fully instructed concerning the law of alibi, the jury rejected that defense as spurious, and upon this record we are satisfied that the jury was amply justified in doing so.

In considering a challenge to the sufficiency of the evidence to warrant and support the verdict of the jury, we must adhere to the principles enunciated so very many times by our Supreme Court and this Court. The jury's verdict of guilt, approved by the trial judge, strips the defendant of the presumption of innocence, with which the law clothed him throughout his trial, and he stands before this Court presumed to be guilty and he has the burden here of demonstrating that the evidence preponderates against the verdict and in favor of his innocence. The verdict so approved accredits the testimony of the prosecution witnesses and establishes the State's theory of the case. We may review the evidence only to determine whether it preponderates against the verdict, and in doing so we are required to take the verdict as having established the credibility of the State's witnesses. The verdict may not be overturned on the facts unless the evidence clearly preponderates against it and in favor of the innocence of the accused. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; Hancock v. State, supra; Morelock v. State, Tenn. Cr.App., 460 S.W.2d 861.

Manifestly the defendant has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict of the jury and in favor of his innocence.

The defendant's next complaint is that the argument of the District Attorney General was inflammatory and prejudiced the jury against him. The argument complained of was as follows:

" . . . He admitted he received a sentence of eleven, twenty-nine on the afternoon, and he was given a break at

that time, the sentence being suspended provided he would not go back around his brother. Whatever trouble it was that he was causing, he was not to go back around his brother, and within five to six hours, he was back out there and set fire to his home. The defendant would tell you that he wasn't there, and I think the judge, in his charge, will tell you concerning weight you can give to witnesses. You can consider the fact that the defendant has been in the penitentiary on felony convictions on at least two prior occasions, prior to September 22, 1971, although he would say here from the stand under oath that he didn't do anything wrong, but he was convicted and served time in the penitentiary. Here are three chances this gentleman has had. He got out of the penitentiary on two occasions, given a chance to come back into society . . ."

The court properly sustained defense counsel's objection "to this line of argument, chances and all," and instructed the jury, "You may comment on his prior record as going to his credibility and that's sufficient. The jury won't consider that part of the argument."

■ Thus the court correctly instructed the jury, in effect, that the defendant's testimony about his prior convictions could only be considered upon the question of his credibility, Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758, and that the reference in the argument to the defendant's previous chances to come back into society must be disregarded. Where, as here, the trial judge sustains objection to improper argument and instructs the jury to disregard it, the error will not constitute grounds for reversal. King v. State, 1 Tenn.Cr.App. 101, 430 S.W.2d 810; Buchanan v. State, Tenn.Cr.App., 454 S.W.2d 178; Biggers v. State, 219 Tenn. 553, 411 S.W.2d 696.

■ Upon this record, we do not believe it can be said with reason that the improper remarks of the District Attorney General corrupted the jury and affected their verdict to the prejudice of the defendant. That is the test. Harrington v. State, supra.

■■ There is no merit in the defendant's next complaint that the verdict is so excessive as to demonstrate passion, prejudice and caprice on the part of the jury. The statutory punishment for arson of this character is not less than three nor more than 21 years in the penitentiary. T.C.A. § 39–501. The law is settled that no prejudice or caprice on the part of the jury is shown simply by imposing a sentence within the legal limits prescribed for the offense. Yearwood v. State, Tenn.Cr.App., 455 S.W.2d 612; Pettyjohn v. State, Tenn.Cr.App., 463 S.W.2d 148; Dotson v. State, Tenn.Cr.App., 454 S.W.2d 174; Snowball v. State, Tenn.Cr.App., 477 S.W.2d 240; Bailey v. State, Tenn.Cr.App., 479 S.W.2d 829; Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1.

■ Finally, the defendant contends that the verdict of the jury constitutes cruel and unusual punishment, arguing that, as he testified, he has a serious health problem and that a sentence of 15 years is in effect life imprisonment, which would be cruel and unusual in view of the minor damage done to the property. The law in this State is that if the punishment is within the limits prescribed by statute for the offense, it does not violate constitutional proscriptions against cruel and unusual punishment. Thomas v. State, Tenn.Cr.App., 465 S.W.2d 887; Hardin v. State, 210 Tenn. 116, 355 S.W.2d 105. Such is the majority rule in other jurisdictions. Black v. United States, 269 F.2d 38 (9th Cir. 1959); 33 A.L.R.3d. 335.

Let the judgment of the trial court be affirmed.

DWYER and O'BRIEN, JJ., concur.