**Cristobaliliana CHAVEZ, Appellant,**

v.

**Rodrigo CHAVEZ and Marta Chavez, Appellees.**

**No. 08–03–00261–CV.**

Court of Appeals of Texas, El Paso.

Aug. 12, 2004.

Christina Elaine Trejo, El Paso, for Appellant.

H. Tati Santiesteban, Luis Chavez, El Paso, for Appellees.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Cristobaliliana Chavez appeals from a judgment designating Rodrigo Chavez and Marta Chavez as managing conservator of her two children. We reverse and remand.

## FACTUAL SUMMARY

Cristobaliliana Chavez (Liliana), a Mexican citizen, and Gilberto Chavez (Gilberto) were married on April 2, 1999 when Liliana was fifteen and Gilberto was twenty-six years of age. They had one child prior to their marriage and one child born during marriage. The couple separated on April 1, 2001. Initially, Liliana maintained custody of the children, including the time she lived at the Battered Women's Shelter. Gilberto visited the children often but in August 2001, he attempted to take the older child by force. He struck Liliana in the presence of the children and she obtained a protective order which she eventually dropped. In October 2001, Gilberto complained to Child Protective Services (CPS) that Liliana was neglecting the children. Edna Morales, an investigator employed with CPS, made an unscheduled home visit but was unable to substantiate the allegation of physical neglect. On December 17, 2001, Liliana's sister took the children and delivered them to Gilberto, who was living with his parents, Rodrigo and Marta Chavez (the grandparents).

That same day, Gilberto made a second complaint to CPS, alleging that Liliana was physically abusing the children and leaving them in the care of other people while she was using drugs. Morales investigated and verified Gilberto's claim that the children had scratches on their faces but she did not determine that Liliana had caused the injuries. Due to the allegations that Liliana was using drugs, Morales created a "Safety Plan" for the children in which she required both parents to undergo drug testing. Both of them tested positive for cocaine. A drug assessment revealed that Liliana was a recreational user while Gilberto had a "chemical dependent disorder." During the subsequent months, the grandparents and Gilberto prevented Liliana from seeing the children until she obtained the services of Texas Rural Legal Aid and filed a petition for divorce. In that petition, she sought managing conservatorship of the children.

At the conclusion of the temporary hearing held on April 8 and 9, 2002, the trial court determined that the children should temporarily remain in the home of the grandparents. Liliana and Gilberto were named temporary possessory conservators and were limited to supervised visitation three times weekly. The court ordered them to undergo drug testing three times monthly. The court further ordered that Gilberto move out of his parents' home and enjoined him from returning there except for supervised visitation with the children as ordered by the court. All of Liliana's drug tests were negative while Gilberto tested positive six times between April and August 2002, despite undergoing residential drug treatment. Additionally, Gilberto

attempted to falsify test results on three other occasions by submitting non-human urine. In response to this information, the court amended the temporary orders to permit Liliana to have unsupervised visits with the children while maintaining the requirement that Gilberto's visits be supervised by a parenting instructor provided by the Texas Department of Protective and Regulatory Services.

The trial court set the case for trial on September 10, 2002 but Gilberto filed a motion for continuance in late August. The trial court granted the continuance on September 6 and re-set the case for September 18. On September 9, the grandparents filed a petition in intervention seeking conservatorship of the children. They alleged that Liliana and Gilberto had voluntarily relinquished possession and control of the children for a period of one year or more, a portion of which was within ninety days preceding the filing of the petition in intervention. Liliana filed a motion to strike the petition in intervention, arguing that the grandparents did not have standing because they had not had possession of the children for at least six months. In response, counsel for the grandparents informed the court that the intervention had been filed to give the court "another choice" in the event neither parent was given custody of the children. The trial judge ruled that she would allow the intervention.

The case proceeded to trial on September 18, 2002 as scheduled. At the conclusion of the hearing, the court granted Liliana's petition for divorce[1] but declined to

---

1. On October 3, 2002, the trial court entered what purports to be a final decree of divorce, even though the court expressly reserved ruling on the custody issues until an unspecified future date. The court disposed of the remaining issues in an order dated April 29,

2003. There can be no final judgment of divorce until the court finally disposes of all issues, including property division and child custody. *See Vautrain v. Vautrain*, 646 S.W.2d 309, 315 (Tex.App.-Fort Worth 1983, writ dismissed); *Underhill v. Underhill*, 614

immediately rule on the conservatorship issue because the court believed neither parent had demonstrated the capacity to parent the children.[2] Consequently, the court postponed the conservatorship hearing for four months and ordered that the children remain with the grandparents pending a final ruling. Interim orders were entered to that effect.

On March 25, 2003, the trial court conducted a hearing on the conservatorship issue. Isabel Robles, who is employed by El Paso Human Services, testified that she provided individual therapy for Liliana and Gilberto for four months but her services concluded in December 2002. At that point, it would have been in the best interest of the children that Liliana be appointed managing conservator, but Robles could not make the same recommendation at the March hearing because she had not been in contact with Liliana since December. Robles was of the opinion that it was not in the best interest of the children for the grandparents to be named managing conservators. She based her opinion, in part, on the grandparents permitting Gilberto to have unsupervised visits with the children in direct contravention of the court's order while denying Liliana her scheduled visits.

Angelica Terrazas, an El Paso Human Services employee, provided parenting instructions to both Liliana and Gilberto from April 2002 through mid-November 2002. In her view, Liliana did well with the instructions. She learned how to communicate and play with her children as well as provide basic care and discipline.

Terrazas closed services in mid-November because Liliana had progressed sufficiently and did not need further services. She saw no evidence to indicate that Liliana had placed the children in emotional danger and they were not afraid of her. The grandparents had resisted efforts to cooperate with Liliana and had evidenced an overly negative attitude towards her. They did not attempt to foster communication between the children and Liliana. In Terrazas's opinion, this had affected the children's bonding and attachment with their mother. Finally, Terrazas believed that if the children remained in the grandparents' home, they would have minimal contact with Liliana.

William Jones, a caseworker employed by the Texas Department of Protective and Regulatory Services, was assigned to an open CPS case involving the Chavez family in February of 2002. The case was opened after both parents tested positive for cocaine. Even though Gilberto repeatedly tested positive for cocaine and the trial court had ordered that he not have unsupervised visitation, the grandparents permitted him to visit the children in the absence of a parenting instructor. In Jones's view, the grandparents despised Liliana. They made negative comments about her and failed to foster her communication with the children. He believed the children would grow to hate their mother. In Jones's opinion, it was not in the best interest of the children to remain with the grandparents. Jones believed the

S.W.2d 178, 181 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.). Therefore, we will construe the "final decree" and "amended order in suit affecting the parent-child relationship" as the final judgment.

2. The most damaging testimony to Liliana came from a private investigator who observed her engaged in sexual intercourse in the backseat of a car while the children were crying in the front seat. He also observed her smoking marijuana in the presence of the children. He related that there was a lot of drinking at her residence and on one occasion, one of her sons ran from the home into the street and was nearly hit by a truck. The investigator did not testify at the March hearing.

children should be returned to Liliana except that the trailer in which she was residing was inappropriate for the children.[3] He described it as a temporary arrangement—"a last-minute decision"— when she was forced to leave a residential living center after a former boyfriend showed up uninvited.[4] Liliana had intended to enter the Transitional Living House but based on her immigration status, she was ineligible. Jones closed the case on March 6, 2003 because all services had been completed and the children were not at immediate risk.

At the conclusion of the hearing, the trial court announced her intention to appoint the grandparents as sole managing conservators, with Liliana and Gilberto appointed as possessory conservators. Upon request, written findings of fact and conclusions of law were prepared and filed. The court did not specifically find that the appointment of Liliana would significantly impair the children's physical health or emotional development. Nor did she find that Liliana had voluntarily relinquished the children to the grandparents for more than one year. The only two factual findings relevant to the award of conservatorship to the grandparents are:

(1) [Liliana] is unable to provide a stable home environment for the children.

(2) The children have resided with the paternal grandparents during the pendency of this case, have thrived, and have enjoyed a safe and stable environment.

From these facts, the court concluded that appointment of the grandparents as sole managing conservators was in the children's best interest. Liliana raises five issues on appeal. Despite the importance of the issues raised, neither Gilberto[5] nor the grandparents have favored us with a brief.

## STANDING

■ In Issue One, Liliana contends that the grandparents did not have standing to intervene. Standing is implicit in the concept of subject matter jurisdiction. *Texas Ass'n of Business v. Texas Air Control Board,* 852 S.W.2d 440, 443 (Tex.1993); *Doncer v. Dickerson,* 81 S.W.3d 349, 353 (Tex.App.-El Paso 2002, no pet.). Standing presents a question of law which we review *de novo. Id.; Brunson v. Woolsey,* 63 S.W.3d 583, 587 (Tex.App.-Fort Worth 2001, no pet.h.).

■ Section 102.003 provides for general standing to file an original suit affecting the parent-child relationship (SAPCR). Tex.Fam.Code Ann. § 102.003 (Vernon Supp.2004).[6] Subsection (a)(9) accords standing to a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than ninety days preceding the date of the filing of the petition. Section 102.004 gives grandparents standing to file an original suit requesting managing conservatorship if the order is necessary because the child's present environment presents a serious question concerning the child's physical health or welfare, or both parents, the

---

**3.** Jones described the home as falling apart, with the roof caving in, nails and lumber strewn across the ground, and a walkway that was unsafe for the children.

**4.** The rules of the facility prohibited visitors, imposed a curfew, and required chores and responsibilities in the upkeep of the home.

**5.** The attorney who represented Gilberto at trial was disbarred during the pendency of this appeal.

**6.** All statutory references herein are to the Texas Family Code unless otherwise indicated.

surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit. Generally, an intervenor must show standing to maintain a suit in his own right in order to intervene. *Segovia–Slape v. Paxson,* 893 S.W.2d 694, 696 (Tex.App.-El Paso 1995, orig. proceeding); *McCord v. Watts,* 777 S.W.2d 809, 812 (Tex.App.-Austin 1989, no writ). This showing requires that the intervenor have some present justiciable interest in the subject matter of the suit. *Segovia–Slape,* 893 S.W.2d at 696. However, Section 102.004(b) of the Family Code specifically provides that grandparents who have substantial past contact with the child may be granted leave to intervene in a SAPCR. Thus, a grandparent need not have standing sufficient to institute a SAPCR in their own right in order to intervene in a pending SAPCR. *See Segovia–Slape,* 893 S.W.2d at 696. This relaxed standing rule promotes the overriding policy in all SAPCR suits, that of protecting the best interest of the child. *Id.*

It is undisputed that the grandparents had substantial past contact with the children. Therefore, the trial court did not abuse its discretion by permitting them to intervene in the divorce proceeding in which managing conservatorship was an issue. Issue One is overruled.

## SUFFICIENCY OF THE EVIDENCE

In Issue Two, Liliana argues that the evidence is legally and factually insufficient to support the award of sole managing conservatorship to the grandparents because they failed to rebut the parental presumption. Alternatively, Liliana asserts that even if the trial court's findings are supported by sufficient evidence, they do not support a legal conclusion that her appointment as managing conservator would significantly impair the children's physical health or emotional development.

### Standards of Review

 Most orders arising from a suit affecting the parent/child relationship will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Lide v. Lide,* 116 S.W.3d 147, 151 (Tex.App.-El Paso 2003, no pet.). An appellant may challenge the trial court's findings of fact for legal and factual sufficiency of the evidence. *See Hodson v. Keiser,* 81 S.W.3d 363, 367 (Tex.App.-El Paso 2002, no pet.). We review those findings by the same standards that are applied in reviewing the sufficiency of the evidence. *See Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). A trial court's conclusions of law are also reviewable to determine whether the law was incorrectly applied to the facts. *See Heritage Resources, Inc. v. Hill,* 104 S.W.3d 612, 619 (Tex.App.-El Paso 2003, no pet.). Conclusions of law are reviewed *de novo* as legal questions. *Hitzelberger v. Samedan Oil Corporation,* 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied). Erroneous conclusions of law are not binding on the appellate court and if the controlling findings of fact will support a correct legal theory, are supported by the evidence and are sufficient to support the judgment, then the adoption of erroneous legal conclusions will not mandate reversal. *Heritage Resources,* 104 S.W.3d at 621.

 While an appellant may challenge the sufficiency of the evidence to support findings of fact, in most circumstances that is not enough. *Hodson,* 81 S.W.3d at 367. In a case involving these overlapping standards of review, we engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion? *Hodson,* 81 S.W.3d at 367; *Lide,* 116 S.W.3d at 151. The traditional sufficiency

inquiry applies to the first question. *Hodson*, 81 S.W.3d at 367; *Lide*, 116 S.W.3d at 151. Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision. *Hodson*, 81 S.W.3d at 367; *Lide*, 116 S.W.3d at 151. In other words, we must conclude that the ruling was neither arbitrary nor unreasonable. *Hodson*, 81 S.W.3d at 367; *Lide*, 116 S.W.3d at 151.

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact-finding. *Lide*, 116 S.W.3d at 151; *In the Interest of De La Pena*, 999 S.W.2d 521, 532 (Tex. App.-El Paso 1999, no pet.). When reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). If any probative evidence supports the factual finding, it must be upheld. *Hodson*, 81 S.W.3d at 367. "Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. *Lide*, 116 S.W.3d at 151. In reviewing an issue asserting that a finding is factually insufficient or against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. *Lide*, 116 S.W.3d at 151. It is for the fact finder to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Id.*

The term "abuse of discretion" is not susceptible to rigid definition. *Hodson*, 81 S.W.3d at 368. The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Id.* Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Id.* The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965). An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Lide*, 116 S.W.3d at 152. If, however, the trial court drew an incorrect conclusion of law by misapplying the law to the facts and the controlling findings of fact do not support a correct legal theory sufficient to support the judgment, an abuse of discretion would be shown.

### The Parental Presumption

Liliana contends that the grandparents failed to overcome the statutory presumption that a parent must be appointed managing conservator. There is a strong presumption that the best interest of a child is served if a natural parent is appointed as a managing conservator. *In re De La Pena*, 999 S.W.2d 521 (Tex.App.-El Paso 1999, no pet); *In the Interest of A.D.H.*, 979 S.W.2d 445, 447 (Tex.App.-Beaumont 1998, no pet.); *see also Brook v. Brook*, 881 S.W.2d 297, 299 (Tex.1994); Tex.Fam.Code Ann. § 153.131(a)(Vernon 2002). Section 153.131(a) statutorily provides for the appointment of the parent as sole managing conservator, or the parents as joint managing conservators, unless the court finds the appointment would not be in the best interest of the child because it

would significantly impair the child's physical health or emotional development. The parental presumption is also rebuttable under Section 153.373(1) if the parent has voluntarily relinquished actual care, control, and possession of the child to a non-parent for a period of one year or more, a portion of which was within ninety days preceding the date of intervention in or filing of the suit; and (2) the appointment of the nonparent as managing conservator is in the best interest of the child.

For the court to award managing conservatorship to a non-parent under Section 153.131, the non-parent must prove by a preponderance of credible evidence that appointing the parent as a managing conservator would result in serious physical or emotional harm to the child. *In the Interest of M.W.*, 959 S.W.2d 661, 665 (Tex.App.-Tyler 1997, no writ); *Brook*, 881 S.W.2d at 298. There must be evidence to support the logical inference that some specific, identifiable behavior or conduct of the parent will probably cause that harm. *M.W.*, 959 S.W.2d at 665. This link between the parent's conduct and harm to the child may not be based on evidence which merely raises a surmise or speculation of possible harm. *Id.* When a non-parent and a parent are both seeking managing conservatorship, "close calls" go to the parent. *M.W.*, 959 S.W.2d at 666; *Ray v. Burns*, 832 S.W.2d 431, 434 (Tex. App.-Waco 1992, no writ).

Developing case law has indicated certain acts or omissions which would demonstrate significant impairment of the child, such as physical abuse, severe neglect, abandonment, drug or alcohol abuse, or immoral behavior on the part of the parent. *M.W.*, 959 S.W.2d at 666; *Thomas v. Thomas*, 852 S.W.2d 31, 35–36 (Tex.App.-Waco 1993, no writ). While we are to determine the present fitness of a parent, we recognize that an adult's future

conduct may be somewhat determined by recent past conduct. *M.W.*, 959 S.W.2d at 666. In and of itself, however, evidence of past misconduct may not be sufficient to show present unfitness. *Id.* Further, it is wholly inadequate to simply present evidence that a non-parent would be a better choice as custodian of the child. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). The non-parent must offer evidence of specific acts or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child. *Id.* at 167.

As we said in *De La Pena*, custody disputes by their very nature are inherently fact-intensive. *De La Pena*, 999 S.W.2d at 529. Concepts of psychological parenting, bonding, and the depth of attachments to parent-figures must be viewed in the context of the evidence presented. *Id.* Appellate courts routinely defer to the fact finder at trial concerning matters of credibility and demeanor, but perhaps in no other type of litigation is it more critical. *Id.* In most instances, the fact finder will not hear from the child the subject of the suit; the child's behavior, experiences, fears, joys, and significant attachments will be conveyed through pictures and through the words of other witnesses, both lay and expert. *Id.* The individuals vying for conservatorship may be scrutinized by the fact finder for such intangible signs as an animated smile when describing a child's achievements, a furrowed brow when explaining typical affectionate concern, or even tears when anticipating the emotional impact the outcome of litigation will have on a child. *Id.* Specific acts or omissions of a parent implicating a significant impairment to a child's emotional development may be inferred from direct evidence. *Id.* Because safety, security, and stability are critical to child development, the danger of uprooting a child may in

some instances rise to a level that significantly impairs the child's emotional development. *Id.* Once again, however, such a conclusion depends on the facts of the case.

As for rebutting the presumption pursuant to Section 153.373, there must be some evidence that the relinquishment was voluntary. *See De La Pena,* 999 S.W.2d at 527 (finding non-parent failed to rebut parental presumption where non-parent thwarted efforts of parent to regain possession, even though initial relinquishment was voluntary). And the relinquishment must be made to the non-parent seeking custody. *See In re Salgado,* 53 S.W.3d 752, 758 at n. 4 (Tex.App.-El Paso 2001, orig. proceeding)(where court in *dicta* questioned the applicability of the statute to a parent who had relinquished the child to his sister rather than the grandmother/movant during a CPS investigation).

### Was the Presumption Rebutted?

 Thus, the grandparents here had to establish either (1) it was not in the children's best interest for Liliana to be appointed as a managing conservator because it would significantly impair the children's physical health or emotional development; or (2) Liliana voluntarily relinquished actual care, control, and possession of the children to the grandparents for at least one year, a portion of which was within ninety days preceding the date the intervention was filed, and appointment of the grandparents as managing conservators was in the children's best interest.

Liliana, in effect, brings a traditional challenge to the alignment of constituent elements. The trial court's judgment is the capstone of the case, built upon elements which are themselves built upon other elements. If an appellant preserves error properly, the trial court's judgment must be supported by conclusions of law applied to specific findings of fact that are supported by evidence and by pleadings. *See, e.g., Light v. Wilson,* 663 S.W.2d 813, 814 (Tex.1983). Where the pyramid is misaligned, error may occur.

We begin with the judgment which appointed the grandparents as sole managing conservators of the children while appointing Liliana as a possessory conservator. The applicable conclusion of law provides that it is in the best interest of the children that the grandparents be appointed sole managing conservators. There is no conclusion that the appointment of Liliana as managing conservator would *not* be in their best interests. The findings of fact are equally sparse: Liliana cannot provide a stable home environment while the grandparents can, and have done so. With regard to Section 153.131(a), the court failed to find that appointment of Liliana was not in the children's best interest because it would significantly impair the child's physical health or emotional development. Where findings of fact are filed by the trial court, they shall form the basis of the judgment upon all grounds of recovery. The judgment may not be supported on appeal by a presumption or finding upon any ground of recovery no element of which has been found by the trial court. Consequently, the grandparents have not rebutted the parental presumption on this statutory basis. Certainly they did not plead it.[7]

---

7. We recognize that technical rules of practice and pleading have frequently been abandoned in child custody proceedings. *See Clark v. Funk,* No. 08–97–00634–CV (Tex. App.-El Paso August 24, 2000, no pet.)(not designated for publication), 2000 WL 1203942, *citing Leithold v. Plass,* 413 S.W.2d 698, 701 (Tex.1967); *In re P.M.B.,* 2 S.W.3d 618, 624 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Baker v. Ericsson,* 689 S.W.2d 492,

We turn now to Section 153.373, which was pled. This statute creates a two-pronged showing in order to rebut the parental presumption: (1) the parent has voluntarily relinquished the children for a period of at least one year, a portion of which was within ninety days preceding the date the intervention was filed, and (2) appointing a non-parent as managing conservator is in the best interest of the children. The trial court appropriately made a finding of the second prong, and there is some evidence to support it. The trial court made no finding under the first prong. Liliana did not request additional findings on this omitted element to prevent it from being deemed on appeal.

### Deemed Findings

When the trial court gives express findings on at least one element of a claim or affirmative defense, but omits other elements, implied findings on the omitted unrequested elements are deemed to have been made in support of the judgment. In other words, if a party secures an express finding on at least one element of an affirmative defense, then deemed findings arise as to the balance of the elements. *Lindner v. Hill,* 691 S.W.2d 590 (Tex.1985); *Dunn v. Southern Farm Bureau Casualty Insurance Co.,* 991 S.W.2d 467 (Tex.App.-Tyler 1999, pet. denied); *Sears, Roebuck & Co. v. Nichols,* 819 S.W.2d 900 (Tex.App.-Houston [14th Dist.] 1991, writ denied). Where deemed findings arise, it is not an appellee's burden to request further findings or to complain of other findings made. It is the appellant's duty to attack both the express and implied findings. Liliana has properly done so.

The grandparents took possession of the children on December 17, 2001 and retained possession through the date of the conservatorship hearing in March 2003. However, there is not one shred of evidence—none—that Liliana *voluntarily* relinquished possession of her sons, and the court did not so find. The children were removed from her possession not by Child Protective Services, but by her sister, who then left the children with Gilberto, who happened to be living with the grandparents. The grandparents and Gilberto then prevented her from seeing the boys over the course of the next several months. The restrictions placed upon her rights of visitation under the temporary orders cannot be described as voluntary. Had she violated them, she risked contempt proceedings. At the conclusion of the September hearing, the trial court announced interim parenting plans to be implemented by CPS which addressed goals, cooperation, discipline, handling of the children's possessions, education, day care, transportation, transition, medical treatment, and extracurricular activities. While it appears Liliana voluntarily signed these agreements, they do not contain a relinquishment of her rights of possession. She even inquired of the judge whether she would regain possession if she put all of her effort into becoming a better parent during the hiatus until the conservatorship hearing. Consequently, there is no evidence to support the implied finding and thus the evidence does not support the judgment. Where the controlling findings of fact do not support a correct legal theory sufficient to support the judgment, an abuse of discretion is shown. Issue Two is sustained. Because of our resolution of this issue, we need not address Issues Three, Four, and Five.

494 (Tex.App.-El Paso 1985, no writ); *C. v. C.,* 534 S.W.2d 359, 361 (Tex.Civ.App.-Dallas 1976, writ dism'd).

## CONCLUSION

We next address the appropriate remedy. In most circumstances, a judgment is reversed and rendered when a legal sufficiency challenge is sustained. However, we are accorded the flexibility of remand when the interest of justice so requires, a remedy we seldom employ. *See* TEX. R.APP.P. 43.3. It is clear from the record that the trial court below struggled to balance the safety and protection of the children with the immaturity and naivete of an immigrant teenage mother. More than a year has passed since the conservatorship hearing and we have no ability to determine the present circumstances of any of the parties, nor do we have the luxury of sitting as a fact finder. Based on the peculiar procedural posture presented, we reverse and remand to the trial court.