Opinion issued March 16, 2007


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-04-01026-CV






TAMMY RENEE WHITWORTH, Appellant


V.


DOUGLAS WAYNE WHITWORTH, Appellee






On Appeal from the 257th District Court

Harris County, Texas

Trial Court Cause No. 2000-64428






DISSENTING OPINION ON REHEARING

 

 The majority has reversed itself sua sponte. Because I believe the majority's
unprecedented and aberrant construction of the Texas Family Code in affirming the
family court's actions is unconstitutional and contrary to the established law of this
State and its failure to address the dispositive statutory and constitutional issues
raised by the appellate briefs and by the motion for rehearing is contrary to our
mandatory statutory duty to address "every issue raised and necessary to final
disposition of the appeal," (1) I dissent. 

 The majority now holds that an associate family judge has the authority under
Texas law to take a 15-month-old child away from her mother, the court-appointed
temporary sole managing conservator of the child pending divorce from the child's
father, without any evidence of actual or potential harm to the child from the mother,
and to transfer the child into the immediate possession and sole managing
conservatorship of a stranger solely because the mother had repeatedly violated the
associate judge's order that the father have unsupervised visitation with the child for
two hours every day due to her belief that the father had sexually abused her four-year-old. The associate judge, whose orders were affirmed by the family court judge,
immediately and permanently delivered the child to the father's mother, Carol
Whitworth, whom the child had never seen, without any evidence in the record that
the child's mother, Tammy Whitworth, was unfit; without any evidence that the child,
K.C., had ever been harmed by Tammy or was in any danger from Tammy; and
without any evidence about Carol, or her home, at all. In addition, the associate judge
assessed onerous penalties of support and visitation on Tammy and forbade her the
means of checking on K.C. 

 As shown below, Carol lacked standing to seek immediate possession,
temporary conservatorship, or permanent conservatorship of K.C. under the United
States Constitution and under firmly established Texas constitutional and statutory
law, and, even had she had standing, she could not have been named managing
conservator of K.C. in lieu of Tammy under similarly well-established law. The
family court's orders transferring immediate possession of K.C. from Tammy to
Carol, naming Carol temporary sole managing conservator of K.C., and imposing
harsh restrictions on Tammy were invalid and its judgment naming Carol permanent
sole managing conservator of K.C. void. 

 Since October 18, 2001, Tammy has never been allowed more than two hours
supervised visitation with K.C. every two weeks, despite there being no
constitutional, statutory, or evidentiary basis for the family court's orders. This
means that K.C. has been kept from her mother by lawless state action from the age
of 15 months to the age of six and a half years. No Texas family court judge or
associate family court judge has ever heretofore, to my knowledge, been found by any
Texas appellate court to have been granted such power by the Texas Family Code or
any other law. 

 

 Our original opinion in this case issued on November 22, 2006. We held that
appellee, Carol Whitworth, lacked standing to intervene in the divorce proceedings
of appellant, Tammy Whitworth, and Carol's son, Douglas, to seek sole managing
conservatorship of Tammy's and Douglas's minor child, K.C. Therefore, the trial
court lacked subject matter jurisdiction over Carol's suit and erred in appointing
Carol temporary sole managing conservator and, subsequently, permanent sole
managing conservator of K.C. We remanded the case to the trial court for further
proceedings in accordance with our opinion. 

 Carol filed a motion for rehearing. Rather than respond to the issues raised by
Carol, the majority reverses itself, summarily holds that Carol has standing on
grounds that are, in my view, insupportable, and affirms the trial court's judgment
awarding Carol permanent sole managing conservatorship of K.C. I would grant
Carol's motion, withdraw our November 22, 2006 opinion and issue this opinion in
order to clarify the holding in our November 22, 2006 opinion. (2) I would reverse and
render judgment that the trial court's appointment of Carol as managing conservator
of K.C. is void, and I would dismiss Carol from these proceedings. I would remand
the cause to the trial court with instructions that Tammy be reinstated as sole
managing conservator of K.C. and that the court conduct such other and further
proceedings as are necessitated by this opinion.

Background


 The majority's opinion omits facts that are, in my view, material to the proper
disposition of this case. I would state the material facts as follows.

 Tammy and Douglas married in August 2000, but separated in September or
October 2000. Douglas filed an original petition for divorce on December 20, 2000.
A second original petition for divorce was filed by Tammy on December 23, 2000.
On April 20, 2001, the trial court signed an order of consolidation. Tammy and
Douglas's only child, K.C., was born on June 13, 2001. (3) The parties reconciled off
and on, separating for the final time in January 2002. By order entered November 30,
2001, Tammy was given custody of K.C. and Douglas was given two hours a day
visitation five days a week and ordered to pay $500 a month to Tammy as temporary
spousal support. On February 22, 2002, Tammy filed a motion for enforcement of
temporary spousal support. 

 On October 18 and 21, 2002, the trial court heard the parties' application for
temporary custody orders pending the divorce. Although we have no transcript of the
hearing, testimony from the divorce hearing indicates that the court heard testimony
that Tammy had repeatedly denied Douglas access to K.C. and that Tammy alleged
that Douglas had sexually abused A.C. and she feared his unsupervised visitation
with K.C. The testimony further indicated that, during the course of the hearing on
October 18, the associate judge ordered Tammy to have her mother, Gayle Cash,
bring K.C. to the court and warned her numerous times that she would be held in
contempt if she did not, but Tammy did not have her brought. The trial court also
ordered Tammy to have her mother bring K.C. to court for the October 21
continuation of the hearing. The docket sheets reflect that, at the end of the October
18 hearing, the trial court found Tammy in contempt and sentenced her to 10 days in
jail for "continuous parental alienation against father through repeated
visitation/access denials and behavior in court." (4)

 The same day, October 18, Carol Whitworth, Douglas's mother, filed an
original petition for intervention, relying on section 102.004(a)(1) of the Texas
Family Code, which grants grandparents standing to seek managing conservatorship
of a child when the child's environment "presents a serious question concerning the
child's physical health or well-being" or both parents consent. See Act of April 20,
1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 125, amended by Act
of June 18, 1999, 76th Leg., R.S., ch. 1048, § 2, 1999 Tex. Gen. Laws 3877, 3878
(current version at Tex. Fam. Code Ann. § 102.004(a)(1) (Vernon Supp. 2006))
("Tex. Fam. Code Ann. § 102.004"). Carol requested that K.C. be placed in her care
on "a temporary and/or permanent basis." She stated no facts or substantive grounds
for intervention in her petition. 

 Tammy stayed in jail for the weekend and appeared in court for the
continuation of the hearing on October 21. At the end of the hearing, the associate
judge entered an order appointing Carol, the non-parent intervenor, as temporary sole
managing conservator of K.C. and Tammy and Douglas as temporary possessory
conservators with only supervised rights of possession for four hours every other
week through the SAFE Supervised Visitation Program ("SAFE"). (5) The October 21
docket sheet stated that Tammy and her mother, Gayle Cash, had "exercised
continuous parental alienation against father through repeated visitation/access
denials and behavior in court during this hearing" and that supervised visitation was
ordered because of the seriousness of the allegations against Douglas and the fact that
the court deemed Tammy a "flight risk with child as demonstrated by her behavior
to court since 10/18/02." The court ordered psychological evaluations of Tammy, 
Douglas, and Carol by Dr. Edward Silverman. Both Tammy and Douglas were
ordered to pay Carol child support for K.C. and to ensure the maintenance of health
insurance for K.C. The court also enjoined Tammy from telephoning Carol and from
going within 50 feet of Carol's residence. The court further enjoined Carol from
taking K.C. on the Coushatta Indian Reservation (6) and from removing her residence
from Harris County. The court also appointed a guardian ad litem for K.C., ordered
Tammy and Douglas to share the ad litem's fees, and ordered Douglas to pay spousal
support to Tammy. There were no pleadings on file seeking any of the foregoing
changes in the temporary orders.

 On February 13, 2003, the trial court ordered that the injunction issued on
October 31, 2002, preventing Carol from taking K.C. to the Coushatta Indian
Reservation, be removed. The court also ordered that Tammy and Douglas were
enjoined from taking photos of K.C. while she was at SAFE. (7) 

 On June 20, 2003, Dr. Silverman, the court-appointed psychologist, submitted
a report to Judge Motheral regarding his evaluation of who should have custody of
K.C. The report was based on multiple interviews with Douglas and Tammy; one
interview with Carol; personality inventory tests administered to Tammy, Douglas,
and Carol; observation of Tammy with J.C. and A.C., her two children who had not
been removed from her custody; multiple observations of Tammy with K.C. at the
SAFE house, beginning in November 2002, shortly after K.C. had been removed from
her mother; a videotape of Tammy's house; telephone conversations with Jane
Markley, the psychologist for Tammy's four-year-old daughter, A.C., and review of
psychotherapy records from that psychologist; review of medical records of K.C.,
J.C., A.C., and Tammy; review of school records for J.C. (Tammy's only school-age
child); review of court documents; and review of numerous additional materials
submitted by Tammy, including, photographs, journal entries, medical records, court
documents, school records, utility receipts, and tax records.

 Dr. Silverman recommended that both parents be named joint managing
conservators of K.C. and that Douglas's initial involvement with K.C. be limited. He
also recommended that Douglas be referred to the Houston Council on Alcohol and
Drugs and that he be ordered to follow treatment recommendations. After stating that
both parents had "significant psychological problems," but that Tammy was "not,
however, psychotic and none of her beliefs are patently absurd or entirely
implausible," Dr. Silverman concluded that Tammy was the healthier parent and that
underneath "is a very committed parent who is genuinely concerned with her
children's welfare, who places a high priority on her role as a parent, and who is
extremely determined to improve herself, protect her children, and provide them with
a safe and healthy environment." He stated his opinion that Tammy was "less
dysfunctional" than she had appeared in the litigation and that her reactions were
"likely more evident in response to stress." He recommended that if the court found
that neither parent could be appointed managing conservator, Carol could be, based
on his limited observation of her, but that further investigation should be done.

 Dr. Silverman opined,

 [Tammy] was clearly [K.C.]'s primary caretaker prior to the temporary
change in managing conservatorship in October of 2002 and it appears
that she was appropriately attending to [K.C.]'s physical and emotional
needs. In fact, if we are assessing [Tammy] as a parent, there is no
evidence of abuse, neglect, alcoholism, drug addiction, severe
psychopathology, or any other factor that would clearly and
unequivocally contraindicate her being an appropriate caretaker for
'K.C.'. Even [Douglas] expressed relatively few concerns about
[Tammy]'s parenting apart from his concern that she prevented him
from seeing [K.C.] and his concern that she has made false allegations
regarding the mistreatment of [A.C.] and [K.C.]. Regarding the
allegation that [Douglas] sexually abused [A.C.], unless one assumes
that [Tammy] consciously and intentionally fabricated this allegation, it
is difficult to fault her for arriving at this conclusion and maintaining
this belief. Although CPS (8) closed the case without validating the abuse,
the abuse was not ruled out and [A.C.'s] therapist, Jane Markley,
continues to have a strong conviction that the abuse may very well have
occurred. (9) Similarly, I find it very difficult to fault [Tammy] for
expressing concerns about the way [K.C.] is being treated in the home
of Carol Whitworth when her observations and perceptions are being
independently supported and validated by assumedly neutral and
objective staff members at the Victim Assistance Centre. It is not
necessary that [Tammy] be correct in her beliefs to be a good parent. It
is only necessary that her beliefs be reasonable, understandable, and
have some basis in fact. (10)


The trial court held no hearing and took no action on Dr. Silverman's report.

 Starting on April 13, 2004, a year and a half after removing K.C. from her
mother's custody and appointing Carol temporary sole managing conservator, the
associate judge heard evidence to determine permanent custody of K.C. At the time
of the April 2004 hearing, K.C. was almost three years old and had been in Carol's
custody for one and one-half years. At that time, Douglas was not seeking primary
custody of K.C. Tammy was employed and was taking care of her other two children,
who were developing normally. Dr. Silverman testified that Tammy was a good
mother to K.C. and to her other children and that he had found no evidence of neglect
or drug or alcohol abuse. He was surprised that K.C. had been taken away from her
mother. He testified that both Tammy and Douglas had psychological problems,
which in Tammy's case were best described as "being out in left field," but that he
did not see anything that would affect Tammy's parenting ability. He recommended
that K.C. be returned to the custody of her mother. Dr. Silverman's testimony
essentially reflected his report submitted to the trial court ten months earlier.

 There was also testimony in the April 2004 custody proceeding that Tammy
had called CPS to Carol's home a number of times and that K.C. had been examined
for evidence of sexual abuse in response to her concerns, but the results of the CPS
investigations were all either inconclusive or concluded without report and no sexual
abuse of K.C. was found. Dr. Silverman attributed these calls to Tammy's concern
for K.C.'s welfare and testified that reports from SAFE confirmed Tammy's claims
that K.C. was dirty and had sores on her. Photographs of K.C. taken by Tammy at
SAFE were not admitted into evidence because Tammy had written on the back of
them. 

 Carol's counsel elicited speculative testimony, based on hypotheticals, of
potential harm to K.C. if Tammy persisted in a pattern of calling CPS when K.C. was
in the possession of another conservator and of having K.C. examined for sexual
abuse. Dr. Silverman testified, however, that he did not expect such behavior to
continue if K.C. were returned to her mother. 

 There was no evidence linking any specific act by Tammy to any actual
physical or emotional harm to K.C., either before or after the trial court removed K.C.
from her custody and possession. Rather, the evidence established that K.C. was
developing normally and was healthy both before and after she was removed from
Tammy's custody, with the exception of conflicting testimony regarding whether
K.C. had developed a limp, been left dirty, and developed sores in Carol's custody.

 On May 17, 2004, the trial court entered a final decree of divorce declaring that
neither Tammy nor Douglas could be the managing conservator of K.C. because it
"would not be in the best interest of the child because such appointment would
significantly impair the child's physical health or emotional development." The
decree ordered that Carol, the non-parent intervenor, be appointed as the sole
managing conservator of K.C. The court found that a standard possession order was
inappropriate for either Tammy or Douglas and not in the best interest of K.C. It
ordered that Tammy continue to have only supervised visitation for four hours every
other Saturday and that Douglas have supervised visitation to be determined by his
mother, Carol. The court entered no findings of fact or conclusions of law. On June
14, 2004, Tammy filed a motion for new trial, which the trial court denied. (11) Tammy
appealed from the trial court's custody determination in the divorce decree.Issues

 Tammy complained in her first issue that the trial court erred in failing to name
her a joint managing conservator of K.C. in violation of the Due Process Clause of
the United States Constitution and of section 153.131 of the Family Code, which
establishes the presumption that a parent is to be appointed managing conservator of
a child. See Tex. Fam. Code Ann. § 153.131 (Vernon 2002). We did not reach these
issues in our November 22, 2006 opinion because we concluded that Carol had failed
to establish her standing to intervene in Tammy's and Douglas's divorce proceedings
to seek managing conservatorship of K.C., and, therefore, the trial court lacked
jurisdiction over her claims. 

 On rehearing, Carol argues that we applied too high a standard of proof to her
claims that she had standing to intervene and to obtain immediate possession and
temporary and permanent sole managing conservatorship of K.C. and that we should
also have considered the preservation of the Indian culture in determining the best
interest of K.C. (12) Specifically, Carol argues that (1) we erred in requiring that the
trial court make a threshold finding of serious and immediate concern for the welfare
of K.C. before removing Tammy as temporary sole managing conservator of K.C. and
appointing Carol as temporary sole managing conservator; (2) we relied on a
superseded statute and superseded case law in holding that there must be "a serious
and immediate question concerning the welfare of the child" before a non-parent has
standing to seek sole managing conservatorship under section 102.004(a)(1) of the
Family Code; (3) Tammy must prove that it would be in K.C.'s "best interest" that
she, rather than Carol, have managing conservatorship of K.C.; and (4) the best-interest-of-the-child standard should be expanded to "include promotion of the
preservation of the Indian culture." 

 The majority does not address any of these issues. Because I believe they are
necessary to the proper disposition of this appeal and, therefore, their consideration
is mandatory under Rule 47.1, I would address each of them in order to clarify the
applicable standards of proof. In addition, I would address the constitutional due
process issues raised by Tammy throughout this litigation, and now given new force
by the majority's opinion that Carol satisfied both the standing requirements and the
burden of proof for a non-parent seeking managing conservatorship of a child--issues
we did not reach in our November 22, 2006 opinion because of our determination that
Carol lacked standing to seek managing conservatorship of K.C. under Texas law.

Standing

 Standing as a Threshold Issue

 Carol intervened in Tammy's and Douglas's divorce proceedings to seek
managing conservatorship of K.C. pursuant to former section 102.004(a)(1) of the
Texas Family Code, which, in addition to the general standing provided by section
102.003(13) of the Family Code, gave grandparents standing to file a suit requesting
managing conservatorship of a child if the order requested was "necessary because
the child's present environment presents a serious question concerning the child's
physical health or welfare," or "both parents, the surviving parent, or the managing
conservator or custodian either filed the petition or consented to the suit." See Act
of April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 125,
amended by Act of June 18, 1999, 76th Leg., R.S., ch. 1048, § 2, 1999 Tex. Gen.
Laws 3877, 3878 (current version at Tex. Fam. Code Ann. § 102.004(a)(1), (2)
(Vernon Supp. 2006)). 

 These statutory standing requirements raised a threshold issue of whether Carol
had standing to intervene in Tammy and Douglas's divorce to seek managing
conservatorship of K.C. The parties did not raise standing in their initial set of briefs,
but, after seeking supplemental briefing from the parties, we addressed standing sua
sponte in our November 22, 2006 opinion, as permitted by Texas law. (13) See Waco
Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851 (Tex. 2000); Texas Ass'n of Bus. v.
Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).

 In its new opinion, the majority omits all mention of former section 102.004(a)
of the Family Code, the provision under which Carol intervened. It briefly references
section 102.004(b) of the Code, which it contends governs intervention of a
grandparent into a SAPCR, without distinguishing between former section
102.004(b), in effect when Carol intervened, and current section 102.004(b); it
declares "Carol has standing to intervene in this action"; and it then performs a
cursory analysis of general principles of a grandparent's standing to intervene in a
SAPCR; and it concludes that "once the child's best interest is before the court and
being litigated, the trial court has discretion to determine that the intervention by a
grandparent may enhance the trial court's ability to adjudicate what is in the best
interest of the child." Whitworth v. Whitworth, 01-04-01026-CV, at *9 (Tex.
App.--Houston [1st Dist.] Mar. 15, 2007) (op. on reh'g) (quoting McCord v. Watts,
777 S.W.2d 809, 812 (Tex. App.--Austin 1989, no writ)). This is an erroneous
statement of Texas law.

 Because (1) this is an issue of extreme importance to Texas law; (2) the
majority's statement of the standing requirements for a grandparent seeking managing
conservatorship of a child under Texas law omits any reference to Carol's own stated
grounds granting her standing (former section 102.004(a) of the Family Code); (3)
the majority's construction of the standing requirements for grandparents seeking
managing conservatorship is contrary to the plain language of the statute it purports
to construe (former section 102.004(b) of the Texas Family Code, which it represents
as still in effect) and contrary to a large body of well-established law interpreting both
former and current section 102.004(b); and (4) the majority's construction of section
102.004(b), if correct, would mean that this provision of the Family Code is
unconstitutional under the Due Process Clause of the United States Constitution, I
will address the law of standing with respect to the issues raised by this case and by
the briefing of the parties on appeal and on rehearing in the detail necessary to impart
my understanding both of the issues in the case and of the applicable law. 

 I reiterate my conclusions in our November 22, 2006 opinion that Carol lacked
standing to intervene in this case to seek temporary or permanent managing
conservatorship of K.C.; the trial court erred in delivering K.C. into Carol's
possession and granting her sole temporary and permanent managing conservatorship
of K.C.; and Carol should be dismissed from these proceedings. 

 Standard of Review of Standing

 Standing is implicit in the concept of subject matter jurisdiction. Waco Indep.
Sch. Dist., 22 S.W.3d at 443; Doncer v. Dickerson, 81 S.W.3d 349, 353 (Tex.
App.--El Paso 2002, no pet.). Subject matter jurisdiction is essential to the authority
of a court to decide a case. Texas Ass'n of Bus., 852 S.W.2d at 443. Standing, as a
necessary component of a court's subject matter jurisdiction, is a constitutional
prerequisite to maintaining suit. Id. at 444; In re C.M.C. & J.T.C., 192 S.W.3d 866,
869 (Tex. App.--Texarkana 2006) (orig. proceeding). The standing requirement
under Texas law stems from two limitations on subject matter jurisdiction: the
separation of powers doctrine and the open courts provision, "which contemplates
access to the courts only for those litigants suffering an injury." Texas Ass'n of Bus.,
852 S.W.2d at 443-44; see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560,
112 S. Ct. 2130, 2136 (1992) (standing in federal law is essential and unchangeable
requirement of case-or-controversy requirement of Article III of Constitution). 
Standing in Texas state court requires (a) "a real controversy between the parties" that
(b) "will be actually determined by the declaration sought." Texas Ass'n of Bus., 852
S.W.2d at 446. Subject matter jurisdiction is never presumed and cannot be waived. 
Id. at 443-44. If a party lacks standing, a court lacks subject matter jurisdiction to
hear the case. Id. at 444; In re C.M.C., 192 S.W.3d at 869. 

 An opinion issued in a cause brought by a party without standing is advisory
because, rather than remedying actual or imminent harm, the judgment addresses only
hypothetical injury. Texas Ass'n of Bus., 852 S.W.2d at 444. Texas courts have no
jurisdiction to render such opinions. Id. When a court has no jurisdiction over the
subject matter, it has no capacity to act as a court and any judgment it renders is void. 
State ex rel. Latty v. Owens, 907 S.W.2d 484, 485 (Tex. 1995); see Dubai Petroleum
Co. v. Kazi, 12 S.W.3d 71, 76 (Tex. 2000); Volume Millwork, Inc. v. West Houston
Airport Corp., No. 01-03-01214-CV, 2006 WL 3628830, at *3 (Tex. App.--Houston
[1st Dist.] Dec. 14, 2006, no pet. h.) (op. on reh'g); Mercer v. Phillips Natural Gas
Co., 746 S.W.2d 933, 936 (Tex. App.--Austin 1988, writ denied). 

 To establish standing, the pleader is required to allege facts that affirmatively
establish the court's jurisdiction to hear the cause. Texas Ass'n of Bus., 852 S.W.2d
at 446; In re C.M.V. & D.A.V., 136 S.W.3d 280, 284 (Tex. App.--San Antonio 2004,
no pet.). When a party lacks standing, the appropriate disposition is dismissal. In re
C.M.C., 192 S.W.3d at 870; see also American Motorists Ins. Co. v. Fodge, 63
S.W.3d 801, 805 (Tex. 2001); Texas Ass'n of Bus., 852 S.W.2d at 446. Dismissal for
lack of subject matter jurisdiction does not decide the merits of the case. In re
C.M.C., 192 S.W.3d at 870. 

 Standing presents a question of law which the appellate courts review de novo. 
See Hairgrove v. City of Pasadena, 80 S.W.3d 703, 705 (Tex. App.--Houston [1st
Dist.] 2002, pet. denied); Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex. App.--Fort
Worth 2001, no pet.). However, when an appellate court questions jurisdiction for
the first time on appeal, there is no opportunity to cure a defect in pleading facts that
affirmatively establish standing. Texas Ass'n of Bus., 852 S.W.2d at 446. Therefore,
"[w]hen a Texas appellate court reviews the standing of a party sua sponte, it must
construe the petition in favor of the party, and if necessary, review the entire record
to determine if any evidence supports standing." Id.

 Carol's Standing Under Section 102.004(a) of the Family Code

 Carol alleged that she had standing to intervene in the SAPCR based on
Tammy's and Douglas's divorce under former section 102.004(a) of the Family Code. 
The majority fails to address this issue. I would hold, as we did in our November 22,
2006 opinion, that Carol did not satisfy the standing requirements of former section
102.004(a).

 Former section 102.004(a) provided:

 (a) In addition to the general standing to file suit provided by Section
102.003(13), (14) a grandparent may file an original suit requesting
managing conservatorship if there is satisfactory proof to the
court that:

 

 (1) the order requested is necessary because the child's
present environment presents a serious question
concerning the child's physical health or welfare; or



 both parents, the surviving parent, or the managing
conservator or custodian either filed the petition or
consented to the suit.



Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 125,
amended by Act of June 18, 1999, 76th Leg., R.S., ch. 1048, § 2, 1999 Tex. Gen.
Laws 3877, 3878 (current version at Tex. Fam. Code Ann. § 102.004(a)(1) (Vernon
Supp. 2006)) (emphasis added).

 The burden of proof on the issue of standing to initiate a suit for managing
conservatorship is imposed on the person seeking standing. See In re Pringle, 862
S.W.2d 722, 725 (Tex. App.--Tyler 1993, no writ) (stating that burden of proof to
initiate suit is imposed upon grandparent petitioners). Thus, the court is required to
make a threshold finding of serious and immediate concern for the welfare of the
child based upon a preponderance of the evidence before a grandparent will have the
right to sue for custody in an original suit. In re R.D.Y., 51 S.W.3d 314, 325 (Tex.
App.--Houston [1st Dist.] 2001, pet. denied). 

 "A child must be in imminent danger of physical or emotional harm for there
to be a serious question concerning the child's physical health or welfare." Id.; see
also Forbes v. Wettman, 598 S.W.2d 231, 232 (Tex. 1980) (statute contemplates "a
situation where the child [is] in imminent danger of physical or emotional harm and
immediate action [is] necessary to protect the child"); McElreath v. Stewart, 545
S.W.2d 955, 958 (Tex. 1977) (same); In re Lau, 89 S.W.3d 757, 759 (Tex.
App.--Houston [1st Dist.] 2002, no pet.) (stating that, before trial court renders
temporary order, there must be "imminent danger of physical or emotional harm that
requires immediate action to protect the child"); In re Pringle, 862 S.W.2d at 724-25
("The Supreme Court has held that the elements of seriousness and immediacy as
drafted in the statute require that the child be in imminent danger of physical or
emotional harm and that immediate action is necessary to protect it."). 

 Here, Carol did not allege any facts to support her intervention to seek
managing conservatorship of K.C. pursuant to section 102.004(a). (15) Nor did the trial
court make any finding that K.C. was in imminent danger of physical or emotional
harm from her mother or that immediate action was necessary to protect her from
Tammy. See In re R.D.Y., 51 S.W.3d at 325. Nor is there a scintilla of evidence in
the record that K.C. was in imminent danger of physical or emotional harm from
Tammy on October 18, 2002, when Carol filed her petition in intervention, or three
days later, on October 21, 2002, when the court removed Tammy as managing
conservator of K.C., named Carol temporary managing conservator, and removed
K.C. from Tammy's immediate possession to Carol's. Rather, the record reflects that
Tammy had made serious allegations about her fears for K.C.'s physical and
emotional harm in Douglas's care as justification for her failure to turn K.C. over to
Douglas for unsupervised visitation. Thus, Carol failed to establish her standing to
sue for and obtain possession and control of K.C. See id.; In re Pringle, 862 S.W.2d
at 726. 

 Carol argues, however, on rehearing, that she did not have to show that there
was "a serious and immediate question concerning the welfare of the child" in order
to have standing to intervene to seek managing conservatorship of K.C. under former
section 102.004(a)(1) of the Texas Family Code. Rather, she contends that this was
a requirement of former section 11.03(b) of the Family Code, which was "eliminated"
when the Code was amended and recodified in 1995. She contends that, as a
grandparent seeking managing conservatorship in a SAPCR filed after 1995 and
before June 18, 2005, when section 102.004 was again amended, she had only to
show that "the child's present environment present[ed] a serious question concerning
the child's physical health or welfare" and that was a lesser standard of proof than the
prior standard that this Court, relying on superseded case law, erroneously applied. 
See Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113,
125, amended by Act of June 18, 1999, 76th Leg., R.S., ch. 1048, § 2, 1999 Tex. Gen.
Laws 3877, 3878 (current version at Tex. Fam. Code Ann. § 102.004(a)(1) (Vernon
Supp. 2006)) ("Tex. Fam. Code Ann. § 102.004"). Carol further contends that when
section 102.004(a) was again amended effective April 18, 2005, the burden of proof
was reduced even further in that it now grants standing to a grandparent to file a suit
seeking managing conservatorship of a child if "the child's present circumstances
would significantly impair the child's physical health or emotional development." 
See Tex. Fam. Code Ann. § 102.004(a)(1) (Vernon Supp. 2006). I would hold that
her contention is without merit.

 In sum, Carol contends that our November 22, 2006 opinion was erroneous in
that we "cited case authority that interpreted a statute of the Texas Family Code that
is no longer in effect in its requirement that the Trial Court make a threshold finding
of serious and immediate concern for the welfare of the child." She alleges that, since
1995, a grandparent can seek managing conservatorship of a child under section
102.004(a) of the Family Code without making such a showing.

 The Texas Supreme Court specifically addressed the intent of the 1995
recodification of Title 2 of the Family Code, in which former section 11.03(b) was
repealed and recodified as section 102.004(a)(1). Jones v. Fowler, 969 S.W.2d 429
(Tex. 1998). The issue in Jones was whether the removal of the word "immediately"
from renumbered section 11.03(8) of the Family Code upon its 1995 recodification
as section 102.003(9) of the Code substantively changed the standing requirement for
a person who had had actual possession and control of a child "for at least six months
immediately preceding the filing of the petition" for conservatorship. Id. at 431. The
court held that the standing requirement did not change. It opined:

 In 1995, Title 2 of the Family Code was recodified and amended by
House Bills 655 and 433, respectively. Act of April 20, 1995, 74th Leg.,
R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 113-282; Act of June 16,
1995, 74th Leg., R.S., ch. 751, §§ 5-122, 1995 Tex. Gen. Laws 3888,
3889-932. The House Bill Analysis of H.B. 655, the bill recodifying
Title 2 of the Family Code, states as its intent, "a nonsubstantive
recodification of the statutes relating to parents and children and suits
affecting the parent-child relationship. This recodification does not
make changes in the meaning or intent of the present law." House
Comm. on Juvenile Justice & Family Issues, Bill Analysis, Tex.
H.B. 655, 74th Leg., R.S. (1995) (emphasis ours). The Senate Bill
Analysis of H.B. 655 indicates that the bill "recodifies and reenacts" the
statute. Senate Comm. on Jurisprudence, Bill Analysis, Tex. H.B.
655, 74th Leg., R.S. (1995). Moreover, the House Bill Analysis of H.B.
433 states that H.B. 655 "nonsubstantively recodified the Family Code." 
House Comm. on Juvenile Justice & Family Issues, Bill Analysis,
Tex. C.S. H.B. 433, 74th Leg., R.S. (1995).


 While H.B. 655 merely recodifies the former Family Code, the purpose
of H.B. 433 was to substantively revise the Family Code by amending
H.B. 655, with the substantive changes listed in a "Section by Section
Analysis." Id. [S]ubsection (9) is not listed among the substantive
changes. Id. Similarly, no substantive changes to subsection 102.003(9)
are listed in the Senate Bill Analysis for H.B. 433. Senate Comm. on
Jurisprudence, Bill Analysis, Tex. C.S. H.B. 433, 74 Leg., R.S.
(1995) (a 27-page document comprehensively listing all intended
substantive changes to Title 2 of the Family Code). In summary, there
is no indication that the Legislature intended the deletion of
"immediately" from subsection 102.003(9) to be a substantive change
in the application of the law.


Jones, 969 S.W.2d at 431-32 (emphasis in original). Because the 1995 changes to
Title 2 were non-substantive except where specifically noted in the legislative history, 
persons who alleged standing to file suit for managing conservatorship of a child
under revised section 102.003(9) of the Family Code still had to prove that they had
had actual possession and control of the child for the six months immediately
preceding their suit. See id.

 The reasoning in Jones applies equally to the 1995 recodification of section
11.03(b) of the Family Code as section 102.004(a)(1). Like section 102.003(9),
which, upon recodification, omitted the word "immediately" as a qualifier to the
concern that must be proved to provide standing to a grandparent to file an original
suit for custody of a child, recodified section 102.004(a) omitted the word
"immediately" as a qualifier to the permission to intervene to seek managing
conservatorship granted a grandparent when "the child's present environment
presents a serious question concerning the child's physical health or welfare." See
Jones, 969 S.W.2d at 431. However, just as Senate Bill Analysis for House Bill 433
failed to list section 102.003(9) as among the sections of the Act to which substantive
changes were made, it also failed to list section 102.004. See Senate Comm. on
Jurisprudence, Bill Analysis, Tex. C.S. H.B. 433, 74 Leg., R.S. (1995).
Therefore, under Jones, the changes made to former section 11.03(b) of the Family
Code when it was recodified as section 102.004(a)(1) in 1995 did not substantively
change prior law. (16) See Jones, 969 S.W.2d. at 431-32. Thus, a grandparent seeking
managing conservatorship of a child under section 102.004(a)(1) of the Family Code
after 1995 still had to prove a serious and immediate concern for the child's "physical
health or welfare." 

 Carol's assertion that a grandparent asserting standing to intervene in divorce
proceedings to seek appointment as managing conservator of a child under section
102.004(a)(1) of the Family Code as it existed between 1995 and 2005 was not
required to show that her suit was necessitated by an "immediate and serious
concern" for "the physical health or welfare" of the child is without merit.

 I would hold that Carol failed to establish her standing to seek managing
conservatorship of K.C. under section 102.004(a) of the Family Code.

 Carol's Standing to Intervene Under Section 102.004(b) of the Family Code

 Carol did not allege that she had standing to intervene to seek managing
conservatorship of K.C. under any other section of the Family Code. However,
because this Court raised the issue of her standing for the first time on appeal, we
were required to consider the record to determine whether she had standing to
intervene in the SAPCR attendant on Tammy's and Douglas's divorce to seek
managing conservatorship of K.C. under any provision of the Code. We held in our
November 22, 2006 opinion that the record did not support the conclusion that Carol
had such standing. 

 On rehearing, the majority sua sponte--and exclusively--addresses section
102.004(b) of the Family Code, without drawing any distinction between former and
current sections 102.004(b), and determines that Carol had standing under that
section. We did not address former section 102.004(b) in our November 22, 2006
opinion because Carol did not allege that she had standing to intervene under that
section of the Code; nor, after being given the opportunity by the Court to brief the
issue of her standing prior to issuance of our November 22, 2006 opinion, did she
allege or argue that she had standing under section 102.004(b); nor did she make any
such allegation in her motion for rehearing; nor did our review of the record reveal
any basis for standing under former section 102.004(b). That section required that
any grandparent unable to maintain an original suit for managing conservatorship of
a child who intervened in an ongoing SAPCR seeking managing conservatorship
under section 102.004(b) must prove "substantial past contact with the child"; and
the record affirmatively established that Carol had had no prior contact with K.C. Yet
Carol's standing under section 102.004(b) is the only standing issue addressed by the
majority on rehearing. Its interpretation and application of that section is, in my view,
profoundly wrong and, if correct, would be unconstitutional.

 Generally, an intervenor must show standing to maintain a suit in her own right
in order to intervene. Segovia-Slape v. Paxson, 893 S.W.2d 694, 696 (Tex. App.--El
Paso 1995, orig. proceeding); McCord, 777 S.W.2d at 812. Both former and present
section 102.004(b) of the Family Code, however, additionally provide that
grandparents who have substantial past contact with the child may be granted leave
to intervene in a SAPCR. Thus, a grandparent need not have standing sufficient to
institute a SAPCR in her own right in order to have standing to intervene in a pending
SAPCR. See Segovia-Slape, 893 S.W.2d at 696. This relaxed standing rule promotes
the overriding policy in all SAPCRs, that of protecting the best interest of the child. 
Id. 

 At the time Carol moved to intervene in this suit, subsection 102.004(b)
provided:

(b) An original suit requesting possessory conservatorship may not
be filed by a grandparent or other person. However, the court
may grant a grandparent or other person deemed by the court to
have had substantial past contact with the child leave to intervene
in a pending suit filed by a person authorized to do so under this
subchapter.


Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 125
(current version at Tex. Fam. Code Ann. § 102.004(b) (Vernon Supp. 2006)
(emphasis added).

 In 2005, while this suit was pending, the Legislature amended the second
sentence of subsection 102.004(b) to read:

 However, the court may grant a grandparent or other person deemed by the
court to have had substantial past contact with the child leave to intervene in
a pending suit filed by a person authorized to do so under this subchapter if
there is satisfactory proof to the court that appointment of a parent as a sole
managing conservator or both parents as joint managing conservators would
significantly impair the child's physical health or emotional development.

Tex. Fam. Code Ann. § 102.004(b) (Vernon Supp. 2006) (emphasis added),
codifying Act of 2005, 79th Leg., R.S., ch. 916, § 3, 2005 Tex. Gen. Laws 3148,
3149. Thus, since this suit was filed, the Legislature has strengthened the
requirements for intervention under section 102.004 so that a grandparent or other
non-parent who is unable to establish standing to bring an original suit for managing
conservatorship but who intervenes in an ongoing SAPCR to seek managing
conservatorship of a child, not only (1) must prove substantial past contact with the
child but also (2) must prove that "appointment of a parent as a sole managing
conservator or both parents as joint managing conservators would significantly impair
the child's physical health or emotional development." The current statute, therefore,
places a very heavy threshold burden on a grandparent seeking to intervene in a
SAPCR. 

 Notably, although former section 102.004(b), unlike amended section
102.004(b), permitted a grandparent who established substantial past contact with a
child to intervene to seek managing conservatorship under former section 102.004(b)
without also having to prove standing to file an original suit for managing
conservatorship, most grandparent intervenors did make such proof and thus would
also have been able to satisfy the more stringent requirements for intervention
imposed by the 2005 amendment to section 102.004(b). See Chavez v. Chavez, 148
S.W.3d 449, 455-56 (Tex. App.--El Paso 2004, no pet.) (holding that when children
had resided with grandparents for several months during pendency of divorce
proceedings, grandparents had standing to intervene and seek managing
conservatorship under former section 102.004(b) and section 102.003(9)); In re
C.M.V., 136 S.W.3d at 285 (holding that grandparents who had had actual possession
and control of children for more than six months immediately prior to suit had
standing under section 102.003(a)(9) to intervene in father's suit to modify custody
in order to seek managing conservatorship of children); In re R.D.Y., 51 S.W.3d at
318-19, 324-25 (holding that maternal grandmother had standing to intervene in
pending SAPCR to seek managing conservatorship of child pursuant to former
section 102.004(b) and section 102.004(a) where she had substantial past contact with
child, there was evidence of abuse and neglect of child by mother, and mother had
been arrested and had subsequently engaged in bizarre and dangerous behavior
towards child, had attacked grandmother with frying pan and hedge clippers, and had
been involuntarily committed to psychiatric center, all of which established serious
and immediate concern for welfare of child); In re Hidalgo, 938 S.W.2d 492, 495-96
(Tex. App.--Texarkana 1996, no pet.) (holding that court could permit grandparent
or other person having substantial past contact with child to intervene in pending
SAPCR even though original suit requesting possessory conservatorship could not
be filed by grandparent or other person; and further holding that step-grandmother
had standing to intervene to seek managing conservatorship of child under section
102.004(b) and section 102.003(9) where natural mother abandoned child after birth;
parents were divorced; natural father remarried; father had custody of child; after
father died, child lived first with stepmother, then with step-grandmother, and mother
first sought custody when child was eleven years old). (17)

 By contrast, the record in this case establishes that Carol could not have
satisfied the standing requirements of former section 102.004(b), much less the
stricter standing requirements under the current statute, any more than she could have
satisfied, or did satisfy, the standing requirements of former section 102.004(a). She
did not have substantial past contact with K.C.; nor did she contend that she did; nor
did she even argue that she had standing to intervene under section 102.004(b). On
direct-examination, Carol responded that she had only seen K.C. "[n]ot more than
once" in K.C.'s entire life before the trial court named her temporary managing
conservator and gave her immediate possession of K.C. Carol also agreed that she
was a "complete stranger" to K.C. Although "substantial past contact" is not defined
in the Family Code, under any definition, this testimony does not rise to the level of
showing substantial past contact with the child so as to grant standing to intervene. 
See In re C.M.C., 192 S.W.3d at 872 (in determining standing, court's inquiry into
grandparent's substantial past contact should focus on amount of actual contact that
occurred between grandparents and children rather than difficulties in maintaining
contact; and holding that despite correspondence and telephone calls with mother and
children, grandparents who had only physically met older grandchild twice and had
never seen younger grandchild lacked standing to maintain suit for adoption on
termination of parental rights); Segovia-Slape, 893 S.W.2d at 696-97 (denying leave
to intervene when no evidence of substantial past contact was introduced other than
allegation that child had resided with aunt for several weeks); cf. In re C.M.C., 192
S.W.3d at 872 & n. 10 (listing cases in which court had found substantial past contact
satisfying standing requirement).

 Plainly, there is no legal basis for a judicial determination that Carol had
standing to intervene in the instant suit to seek managing conservatorship of K.C. 
The majority, however, mentions none of this law. It concludes, with bare citation
to general principles of standing to intervene under some of the cases mentioned
above, and with specific citation only to McCord, that a grandparent had in 2001, and
still has, standing to intervene in an ongoing SAPCR to seek managing
conservatorship of a child at the mere discretion of the trial court. Accordingly, it
holds that the trial court did not err in allowing Carol to intervene in Tammy's and
Douglas's divorce proceedings to seek to wrest sole managing conservatorship of
K.C. from her mother on both a temporary and a permanent basis.

 The majority does not explain how the reading of the law it attributes to
McCord, a pre-Code case, can be reconciled with the plain language of former section
102.004(b), codified after McCord was decided, which sets out the Legislature's
statutory requirements for intervention by a grandparent. (21) Nor does the majority
explain--or even allude to--the large body of law construing both former and current
section 102.004(b) that is inconsistent with its opinion.

 Most importantly, the majority does not explain how former section 102.004(b)
could possibly have been constitutional if its interpretation of Texas law is correct,
since it interprets former section 102.004(b) as granting a state court trial judge even
greater discretion to interfere with the constitutional right of parents to rear their own
child than the Washington State statute governing mere access to a child the United
States Supreme Court held unconstitutional under the Due Process Clause in Troxel
v. Granville. See 530 U.S. 57, 61, 72-73, 120 S. Ct. 2054, 2058, 2064 (2000)
(invalidating Washington State statute that permitted state court to order that
grandparents have visitation rights to child over objections of fit parent "when
visitation may serve the best interest of the child whether or not there has been any
change of circumstances"). 

 The Texas Supreme Court has, like the United States Supreme Court, recently
explicitly recognized the constitutional right of a fit parent to raise her own child
without interference due to a state court judge's determination, in the exercise of his
discretion, that the child's best interest will be enhanced by interfering with that right,
opining that "'[s]o long as a parent adequately cares for his or her children (i.e., is fit),
there will normally be no reason for the State to inject itself into the private realm of
the family.'" In re Mays-Hooper, 189 S.W.3d 777, 778 (Tex. 2006) (quoting Troxel,
530 U.S. at 68, 120 S. Ct. at 2061). Like the United States Supreme Court in Troxel,
the Texas Supreme Court in Mays-Hooper overturned court-ordered access by a
grandparent to a child over the mother's objection. See id. In sum, the majority
points to no sustainable legal principle to justify its determination that Carol
established standing to intervene to seek managing conservatorship of K.C., and it
overlooks, and effectively overrules, the large body of controlling law, including
United States and Texas Supreme Court law, that contravenes its opinion.

 I would hold that Carol plainly failed to establish standing to seek managing
conservatorship of K.C. under former section 102.004(b) of the Family Code in that
she neither pled nor proved that she had had substantial past contact with K.C., and
the record conclusively establishes that she did not have the contacts required for
standing to intervene in the SAPCR attendant on Tammy's and Douglas's divorce or
to seek managing conservatorship of K.C. 

Appointment of Carol as Temporary Managing Conservator of K.C. and
Transfer of Possession from Tammy to Carol


 Having summarily concluded, in contravention of established law, that Carol
had standing to seek and obtain both temporary and managing conservatorship of
K.C., the majority makes no reference to the subsidiary issues raised by Carol on
rehearing that are pertinent to determining her rights with respect to K.C. These
critical issues are addressed below.

 In addition to arguing, incorrectly, in her motion for rehearing that she did not
have to show that K.C. was in imminent danger of physical or emotional harm in
order to have standing to seek managing conservatorship under former section
102.004(a) of the Family Code, Carol argues that it was not necessary for the trial
court to make a threshold finding of serious and immediate concern for the welfare
of K.C. before issuing temporary orders removing Tammy as court-ordered managing
conservator of K.C. and appointing Carol as temporary sole managing conservator of
K.C.; transferring immediate possession of K.C. from her mother, Tammy, to Carol;
ordering Tammy to pay child support to Carol; enjoining Tammy from telephoning
Carol or going within 50 feet of her house; and permitting Tammy to have supervised
visitation with K.C. for only four hours every two weeks at SAFE. Carol contends
that the "immediate question" requirement is "an alternative and not a mandatory
requirement on the trial court before it renders temporary orders." 

 The majority does not address this issue. I consider it to be critical to the
determination of the validity of the trial court's orders, hence of Carol's rights. 
Therefore, I consider this Court bound to address it under Rule 47.1. I would hold
that Carol's argument is without merit.

 Carol intervened in Tammy's and Douglas's divorce on Friday, October 18,
2001, and, after having jailed Tammy for having repeatedly disobeyed its order that
Douglas have daily unsupervised visitation of K.C. and failing to bring K.C. to the
Friday hearing, on Monday, October 21, 2001, the associate judge divested Tammy
of sole managing conservatorship of K.C., appointed Carol sole temporary managing
conservator, and transferred immediate possession of K.C. from Tammy to Carol. 
The October 18 and 21 hearings were, therefore, a de facto habeas corpus proceeding
to which section 157.374 of the Family Code applies. When the habeas corpus
statute, section 157.374, applies, valid temporary orders may issue only upon
satisfaction of its terms. 

 Section 157.374 provides, in its entirety, "Notwithstanding any other provision
of this subchapter, the court may render an appropriate temporary order if there is a
serious immediate question concerning the welfare of the child." Tex. Fam. Code
Ann. § 157.374 (Vernon 2002) (emphasis added). In a habeas corpus action, the
party who proves a right to immediate possession under a prior order of the court
(here, Tammy) is entitled to possession unless the trial court makes a written finding
in temporary orders that there is a serious immediate question concerning the child's
welfare. Whatley v. Bacon, 649 S.W.2d 297, 299-300 (Tex. 1983) (order appointing
maternal grandparents as temporary managing conservators of their grandchildren
was not properly made pursuant to statute in absence of any allegation that there
existed serious immediate question concerning welfare of grandchildren; maternal
grandparents were not entitled to possession of their grandchildren under statute
because they had no parental rights in absence of valid court order granting them right
to possession); McElreath, 545 S.W.2d at 957-58; see also In re G.R.W., 191 S.W.3d
896, 898 n.1 (Tex. App.--Texarkana 2006, no pet.) ("[I]n a habeas corpus action to
obtain immediate possession of a child, the party who proves immediate possession
under some prior order is entitled to possession unless the trial court makes a written
finding in temporary orders that there is a 'serious immediate question' concerning
the child's welfare . . . ."); In re Lau, 89 S.W.3d at 759 (same). "[A]n oral finding is
not sufficient." In re Lau, 89 S.W.3d at 759. There was no such written finding in
this case; nor was there any evidence to support such a finding.

 The supreme court has repeatedly spelled out the degree of seriousness or
immediacy that allows a court to issue a temporary order transferring immediate
possession of a child, namely when "the child [is] in imminent danger of physical or
emotional harm and immediate action [is] necessary to protect the child." McElreath,
545 S.W.2d at 958; see also Whatley, 649 S.W.2d at 299; Forbes, 598 S.W.2d at 232;
In re Lau, 89 S.W.3d at 759 (acknowledging that "[t]he Texas Supreme Court has
defined 'serious immediate question' to mean imminent danger of physical or
emotional harm that requires immediate action to protect the child"). The standard is
the same for the issuance of a temporary custody order. See McElreath, 545 S.W.2d
at 958.

 A judge who issues an order transferring the possession and temporary custody
of a child without making the necessary factual findings acts without authority and
the orders are invalid. See Whatley, 649 S.W.2d at 299-300 (holding order awarding
grandparents temporary custody of children invalid when order did not include fact
finding of serious immediate question concerning welfare of the children; court was
not presented with record of hearing; and application for habeas corpus made no
allegation of serious immediate question concerning welfare of children).

 Here, as in Whatley, the trial court removed Tammy as sole managing
conservator of K.C., removed K.C. from Tammy's possession, and appointed Carol
temporary managing conservator even though Tammy was entitled to possession of
K.C. as managing conservator under a valid prior court order, which Carol lacked
standing to challenge. Therefore, Carol had no legal right to an order granting her
immediate possession of K.C., and the trial court's order was invalid. See Whatley,
649 S.W.2d at 300 (if only relator is entitled to possession by virtue of court order,
court must compel return of child to relator). In addition, the trial court made no
written finding that K.C. was in imminent danger of physical or emotional harm from
her mother, Tammy, or that immediate action was necessary to protect K.C. Nor was
there any evidence in the record to support such findings. Nor could the habeas
corpus statute, section 157.374, have conferred standing on Carol to intervene in
Tammy's or Douglas's divorce proceedings to seek either a temporary order or a
permanent order naming her managing conservator of K.C. That proof had to come
from satisfaction of the requirements of either former section 102.004(a) or former
section 102.004(b) of the Code, which Carol, likewise, did not provide.

 I would hold that the trial court erred, first, in permitting Carol to intervene;
second, in transferring sole managing conservatorship from Tammy to Carol in a
temporary order; and third, in removing K.C. from the immediate possession of her
mother, the sole managing conservator of K.C. under the court's prior order, and
transferring immediate possession of K.C. to Carol without proof of serious and
immediate danger to K.C. in her mother's possession. Therefore, the trial court's
orders were invalid in every respect and conferred no legitimate parental rights on
Carol. See id. 

Determination of the Best Interest of K.C.

 Carol contended in her original appellate brief and contends in her motion for
rehearing that, to obtain modification of the conservatorship order, Tammy must
prove that it would be in K.C.'s best interest that she, K.C.'s natural mother, rather
than Carol, a non-parent, have managing conservatorship of K.C. The majority
agrees. It assumes that to affirm the trial court's appointment of Carol as sole
managing conservator of K.C., it need only look for evidence from the divorce
proceedings that, in its view, supports the conclusion that the trial court's rulings
were within its discretion, i.e., not "arbitrary or unreasonable." It states that Carol
was required only to prove by a preponderance of the evidence that appointment of
Tammy as sole or joint managing conservator would result in physical or emotional
harm to K.C., that such disputes are "fact-intensive," and that "[a]ppellate courts
routinely defer to the fact finder at trial concerning matters of credibility and
demeanor." It thus reduces the burden of proof of a non-parent attempting to wrest
managing conservatorship of a child away from a parent to a mere matter of
"credibility and demeanor" in the trial judge's opinion, to which "[a]ppellate courts
routinely defer." In short, the burden of proof reduces to nothing more than the trial
court's absolute discretion to determine what it thinks would be in the child's best
interest as between a parent and a non-parent based on the judge's opinion of the
witnesses. This dramatic reduction in the burden of proof is unprecedented in Texas
law and contrary to established constitutional, statutory, and case law.

 Because I do not believe Carol established standing to assert any interest in the
upbringing of K.C., I would dismiss her from this suit without reaching the issue of
whether the trial court properly exercised its "discretion" to determine the best
interest of K.C. However, the majority's omission of any reference to the
constitutional issues in this case, its statement of the rights of non-parents to intervene
in a lawsuit and to obtain sole managing conservatorship of a child, and its
application of the law to the record in this case all compel review of the trial court's
implied determination--and the majority's holding--that Carol not only had standing
to maintain her suit but carried the burden of proof of a non-parent seeking managing
conservatorship of a child.

 Carol's Rights as Court-Ordered Managing Conservator of K.C.

 First, as the Texas Supreme Court held in Whatley, invalid court orders
transferring custody and immediate possession of a child confer no parental rights on
a grandparent. See 649 S.W.2d at 300. Nor does a judgment that a court lacks
jurisdiction to render convey any rights; it is void. See id.; State ex rel. Latty, 907
S.W.2d at 485. 

 Here, Carol lacked standing to intervene in Tammy's and Douglas's divorce
proceedings to seek managing conservatorship of their minor child, K.C., and she
failed to prove either that there was a serious and immediate concern for K.C.'s
welfare, so as to establish her standing under section 102.004(a), or that she had had
substantial past contact with K.C., so as to establish her standing under section
102.004(b). Nor did Carol establish that K.C. was in imminent danger of physical or
emotional harm from her mother so that immediate action under the habeas corpus
statute, section 157.374, was necessary to protect K.C. 

 Therefore, the trial court's orders appointing Carol as temporary managing
conservator of K.C., removing K.C. from Tammy's immediate possession, granting
Tammy only supervised visitation of K.C. for four hours every two weeks at SAFE,
ordering Tammy to pay child support to Carol, and enjoining Tammy from
telephoning Carol or going within 50 feet of her house were all invalid, and its
judgment appointing Carol permanent sole managing conservator of K.C. is void. See
Whatley, 649 S.W.2d at 300 (when there is prior valid order governing possession of
child, writ of habeas corpus cannot be used as vehicle for redetermination of right to
possession and any such order is invalid); State ex rel. Latty, 907 S.W.2d at 485;
Mercer, 746 S.W.2d at 936. Thus, Carol has no parental rights with respect to K.C. 
Tammy, however, does, both under the United States Constitution and under the
prior, valid order naming her sole managing conservator of K.C., which was
improperly set aside by the trial court.

Constitutional Due Process Violations Tammy has asserted throughout this appeal that the trial court's orders violated
her constitutional due process rights. Again, the majority fails even to address, much
less to decide, this constitutional issue, although it is clearly necessary to final
disposition of this appeal given the majority's holding affirming Carol's right to
permanent sole managing conservatorship of K.C. (22) I agree with Tammy. 

 The United States Supreme Court has long recognized that a parent's right to
"the companionship, care, custody, and management" of his or her children is a
constitutional interest "far more precious than any property right." Santosky v.
Kramer, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982). In fact, the Supreme
Court has emphasized that "the interest of parents in the care, custody, and control of
their children--is perhaps the oldest of the fundamental liberty interests recognized
by this Court." Troxel, 530 U.S. at 65, 120 S. Ct. at 2060. Likewise, the Texas
Supreme Court long ago concluded that "this natural parental right" is "essential," "a
basic civil right of man," and "far more precious than property rights." Holick v.
Smith, 685 S.W.2d 18, 20 (Tex. 1985). Thus, "the relationship between parent and
child is constitutionally protected." Troxel, 530 U.S. at 66, 120 S. Ct. at 2060 (citing
Quilloin v. Walcott, 434 U.S. 246, 255, 98 S. Ct. 549, 554 (1978)). Parents have the
responsibility and the right to direct the upbringing and education of their children. 
Id. at 65, 120 S. Ct. at 2060 (citing Pierce v. Society of Sisters, 268 U.S. 510, 534-35,
45 S. Ct. 571, 573 (1925)). In fact, it is "cardinal" that the custody, care, and nurture
of a child reside in the parents. Id. (citing Prince v. Massachusetts, 321 U.S. 158,
166, 64 S. Ct. 438, 442 (1944)). 

 It is now firmly established that the Due Process Clause of the Fourteenth
Amendment to the United States Constitution protects the fundamental rights of
parents to make decisions concerning the care, custody, and control of their children. 
Troxel, 530 U.S. at 66, 120 S. Ct. at 2060; see also Holick, 685 S.W.2d at 20; In re
Mays-Hooper, 189 S.W.3d at 778. As the Supreme Court opined in Troxel, "[T]he
Due Process Clause does not permit States to infringe on the fundamental right of
parents to make child rearing decisions simply because a state judge believes a
'better' decision could be made." Troxel, 530 U.S. at 72-73, 120 S. Ct. at 2064. In
other words, what the majority approves as the law of this State is exactly what Troxel
condemns as unconstitutional.

 The majority references none of this law, but its holding that a state court judge
may allow a grandparent to intervene to seek managing conservatorship of a child
whenever it believes the child's best interest would be enhanced and its further
holding that whether the grandparent satisfies the burden of proof of a non-parent
seeking managing conservatorship is a "fact-intensive" inquiry that comes down to
the trial judge's estimate of the credibility of the witnesses necessarily disregards the
constitutional issue and denies its applicability. Were I to reach this issue, I would
hold that by allowing Carol to intervene and obtain sole managing conservatorship
of K.C. without any showing of physical or emotional harm to K.C. to justify its
actions, and then by reaffirming its decision in making its invalid orders permanent,
the trial court clearly abused its discretion and violated Tammy's fundamental due
process right to the care, custody, and control of her child.

Burden of Proof of Non-Parent With Standing to Seek Managing
Conservatorship of a Child


 The majority, however, moves directly from its determination that Carol had
standing to seek temporary and permanent sole managing conservatorship of K.C. to
its determination that she satisfied the burden of proof imposed upon a non-parent
who seeks managing conservatorship of a child by overcoming the strong
presumption in Texas law that the best interest of a child is served if a natural parent
is appointed as a managing conservator. See Tex. Fam. Code Ann. § 153.131(a)
(Vernon 2002); In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000); Lewelling v. Lewelling,
796 S.W.2d 164, 166 (Tex. 1990); In re De la Pena, 999 S.W.2d 521, 527 (Tex.
App.--El Paso 1999, no pet.); In re A.D.H. & S.J.H., 979 S.W.2d 445, 447 (Tex.
App.--Beaumont 1998, no pet.). In other words, it moves directly to Carol's
contention on appeal that Tammy should not be appointed managing conservator of
K.C. and argues that Carol was validly appointed over Tammy and, therefore, should
remain sole managing conservator, an argument that cannot stand scrutiny under
either the law or the record of this case.

 Section 153.131(a) of the Family Code statutorily provides for the appointment
of a parent as sole managing conservator, or the parents as joint managing
conservators, unless the court finds the appointment would not be in the best interest
of the child because it would significantly impair the child's physical health or
emotional development. See Tex. Fam. Code Ann. § 153.131(a). "The . . . language
requiring a showing that appointment of the parent would significantly impair the
child's physical or emotional development creates a strong presumption in favor of
parental custody and imposes a heavy burden on a non parent." Lewelling, 796
S.W.2d at 167. 

 Thus, even if a non-parent, such as a grandparent, has standing to sue for
conservatorship of a child, he must still overcome the strong presumption in Texas
law that a parent should be appointed managing conservator. This parental
presumption is deeply embedded in Texas law. In re V.L.K., 24 S.W.3d at 341;
Lewelling, 796 S.W.2d at 166. Specifically, it is grounded in the constitutionally
recognized "essential right" and "basic civil right" of a parent to raise his or her child. 
In re M.W., 959 S.W.2d 661, 665 (Tex. App.--Tyler 1997, no writ) (quoting Stanley
v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212-13 (1972)). In other words, this
statutory presumption is grounded in the constitutional right of a fit parent to raise her
child without interference by the state.

 Thus, for the court to award managing conservatorship to a non-parent with
standing, "the nonparent must affirmatively prove by a preponderance of the evidence
that appointment of the parent as managing conservator would significantly impair
the child physically or emotionally." Lewelling, 796 S.W.2d at 167. It is wholly
inadequate simply to present evidence that a non-parent would be a better choice as
custodian of the child. Id. To carry his burden, a nonparent seeking managing
conservatorship of a child must "offer evidence of specific actions or omissions of the
parent that demonstrate an award of custody to the parent would result in serious
physical or emotional harm to the child." Id. (emphasis added). (23) 

 The majority states that it is invoking the law of this State, but there is
absolutely no evidence to support the trial court's having removed K.C. from
Tammy's care, custody, and control in the first place. And, by transposing this in to
a case where Carol is a legitimate managing conservator of K.C. and any testimony
by her interested witnesses is sufficient to support the trial court's absolute discretion
as to who should have custody of K.C. as between Tammy, a parent, and Carol, a
non-parent, the majority opinion is far more deferential to a non-parent's "rights" and
a state court's discretion than any prior Texas cases. 

 Prior case law has indicated the types of acts or omissions that demonstrate
significant impairment of the child, such as physical abuse, severe neglect,
abandonment, drug or alcohol abuse, or immoral behavior on the part of the parent. 
See Brook v. Brook, 881 S.W.2d 297, 298 (Tex. 1994); In re Hidalgo, 938 S.W.2d at
494, 497 (affirming appointment of mother and step-grandmother as joint managing
conservators when mother effectively abandoned child after birth; child was raised
first by father and stepmother, then, after father's death by stepmother, and then by
step-grandmother; and mother first sought custody when child was eleven years old);
Thomas v. Thomas, 852 S.W.2d 31, 32-36 (Tex. App.--Waco 1993, no writ) (holding
trial court did not err in appointing maternal grandmother as managing conservator
when evidence showed grandmother had been child's primary caretaker for years;
father had history of criminal conduct, drug and alcohol use, dishonesty,
unemployment, and instability and had abandoned and failed to support child; and
mother, who had immoral and unstable life-style and had exposed child to violence,
asked court to award managing conservatorship to grandmother). 

 The "[e]vidence must support the logical inference that some specific,
identifiable behavior or conduct of the parent will probably cause that harm." In re
M.W., 959 S.W.2d at 665 (emphasis added). The link between the parent's conduct
and harm to the child may not be based on evidence which raises mere surmise or
speculation of possible harm. Id.; see Lewelling, 796 S.W.2d at 167-68 (holding that
evidence that parent is victim of spousal abuse and that parent is unemployed, living
in crowded conditions, and had multiple visits to mental hospital was no evidence that
awarding custody to parent would significantly impair child); In re M.W., 959
S.W.2d at 667 (holding that trial court erred in appointing grandmother managing
conservator because evidence that mother left child with grandmother by agreement
for two years while she attended college and obtained degree, parents had argued in
the past, and court-appointed psychologist believed grandmother would be a better
choice because parents were too immature, defensive and angry at one another to be
good parents raised only "speculation of possible harm") (emphasis added); In re
W.G.W., 812 S.W.2d 409, 414-15 (Tex. App.--Houston [1st Dist.] 1991, no writ)
(holding evidence of significant impairment insufficient to overcome parental
presumption when mother and non-parent seeking custody had unsuccessful
marriage, child lived with non-parent for period of time, mother and non-parent
abused each other while child was in home, including mother's brandishing fire poker
in front of children and trying to stab non-parent with knife in front of children, and
mother constantly changed residences).

 Here, there is absolutely no evidence of any specific, identifiable behavior by
Tammy before or after her daughter was taken away from her, such as physical abuse,
severe neglect, or abandonment of K.C. or her other children, drug or alcohol abuse,
instability, violence, or any other specific, identifiable behavior that could establish
the necessary link between Tammy's having custody of K.C. and K.C.'s being in
danger of serious physical or emotional harm. 

 The associate judge made no evidentiary findings to support his initial orders
removing K.C. from Tammy's possession, granting Carol temporary sole managing
conservatorship and immediate possession of K.C., enjoining Tammy from
telephoning Carol or going within 50 feet of her residence, and ordering Tammy to
have only supervised visitation with K.C. at SAFE for four hours every other week,
when K.C. was only fifteen months old. 

 Nor did the trial court conduct any hearing on the custody orders in June 2003,
when K.C. was two years old, when it received the psychologist's report the court had
itself commissioned from Dr. Silverman. Had it done so, it could not have rationally
discounted as simply "not credible" Dr. Silverman's detailed findings, his conclusion
that Tammy exhibited none of the behavior found in the foregoing cases to constitute
grounds for removing a child from her mother's custody, or his opinion that K.C.
should be returned to her mother and Tammy and Douglas named joint managing
conservators, with Douglas to have limited access initially and be ordered to take
counseling for alcoholism. Frankly, it is dismaying that the trial court saw no need
to make any inquiry at that time into the circumstances into which it had removed
K.C., either when it took her away from Tammy or even after being put on notice by
Dr. Silverman of the substantiation of Tammy's allegations of Douglas's violence,
alcoholism, and spousal abuse, of at least some substantiation of Tammy's allegations
that A.C. had been sexually abused by Douglas, and of findings by SAFE and reports
by Douglas's former girlfriend indicating that Carol was neglecting K.C. and placing
her in a violent and filthy environment.

 K.C. was almost three years old and had been in Carol's custody for a year and
a half when the custody hearing was held. No evidence was presented in the custody
hearing of any abuse of any of her children by Tammy, nor was there any evidence
of any link between any specific act by Tammy and any physical or emotional harm
to K.C. Instead, the testimony in the divorce proceedings established that K.C. was
in good emotional and physical health when she was removed from Tammy's
possession and control and that Tammy had good parenting skills; and there was no
evidence of neglect or alcohol or drug abuse or immoral behavior on Tammy's part
that had affected K.C. emotionally or physically. There was expert testimony by the
court-appointed psychologist, Dr. Silverman, that Tammy had psychological
problems, which he described as being "out in left field" and failing to follow court
orders, but that they did not affect her parenting abilities, which were very good. This
testimony reflected Dr. Silverman's earlier report to the court, in which he
recommended that K.C. be returned to her mother, as he did at trial. 

 There was speculative testimony based on hypotheticals posed by Carol's
counsel as to whether K.C. would be harmed if Carol persisted in a behavior pattern
of calling CPS when K.C. was in Carol's and Douglas's possession or having
repeated examinations of K.C. to determine whether Douglas had sexually abused
her, but Dr. Silverman testified that he did not see foresee future behavior by Tammy
harmful to K.C. Dr. Silverman also testified that Tammy sincerely believed that
Douglas had abused A.C. and might be abusing K.C.; that A.C.'s psychologist, Jane
Markley, supported Tammy's belief that A.C. had been molested; and that
photographs taken at SAFE substantiated Tammy's accusations of neglect of K.C. by
Carol. Carol's witnesses, including a physician, testified, however, that Tammy's
fears for K.C. were groundless. 

 None of this testimony amounted to more than a scintilla of evidence that
Tammy was an unfit mother or that K.C.'s being in the sole managing
conservatorship of her mother "would significantly impair the child's physical health
or emotional development," even had K.C. been taken from her mother pursuant to
constitutionally and statutorily valid proceedings and even had Carol proved that she
had standing to assert parental rights to K.C., which she did not. See Tex. Fam.
Code Ann. § 102.004(a)(1); In re Pringle, 862 S.W.2d at 726 (court-appointed
expert's opinions that despite personality imperfections, child was normal,
nontraumatized six-year-old established that paternal grandparents failed to discharge
their burden of proving that child was in imminent danger of physical or emotional
harm or that immediate action was necessary to protect her from such harm, so that
paternal grandparents did not have standing to bring suit to remove mother as sole
managing conservator). It was wholly inadequate for Carol to argue that she would
be a better custodian of K.C. than Tammy. See Lewelling, 796 S.W.2d at 167; see
also Troxel, 530 U.S. at 72-73, 120 S. Ct. at 2064. 

 On this record, even if Carol had established her standing to seek managing
conservatorship of K.C., which she did not, she still would not have overcome the
strong parental presumption that Tammy, K.C.'s natural parent, should continue as
managing conservator of K.C. and that Carol, a non-parent, should not be awarded
managing conservatorship. 

Preservation and Promotion of Indian Culture

 Finally, observing that Douglas is one-half Coushatta Indian, and that,
therefore, K.C. is one-quarter Native American, Carol contends that we should
expand the best-interest-of-the-child standard in a SAPCR filed in connection with
state court divorce proceedings to "include promotion of the preservation of the
Indian culture." The majority does not address this issue, although it too is necessary
to the final disposition of this appeal since there are indications in the record that the
associate judge did, in fact, give great weight to Carol's insistence that this case was
governed by the Indian Child Welfare Act, which has as one of its goals the
preservation of Indian Culture .

 Throughout this litigation, Carol has urged the applicability of the "Indian
Child Welfare Act" to this case and to the determination of K.C.'s best interest. In
her appellate brief, Carol argued that "Indian tribal sovereignty is recognized in the
Indian Child Welfare Act declaration of policy, which states that the best interest of
an Indian child is protected by promoting the stability of tribes and families in order
to promote the preservation of Indian culture." See 25 U.S.C. § 1901(3), (4). She
urges on rehearing that "[t]he determination of the best interest of an Indian child
must include consideration of tribal family practices." See id. § 1902. 

 The Indian Child Welfare Act provides, in relevant part, that "[i]n any State
court proceeding for the foster care placement of, or termination of parental rights
to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall
have a right to intervene at any point in the proceeding." Id. § 1911(c) (emphasis
added). The Act further provides that "[i]n any State court proceeding for the foster
care placement of, or termination of parental right to, an Indian child not domiciled
or residing within the reservation of the Indian child's tribe, the court, in the absence
of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the
tribe, absent objection by either parent, upon the petition of either parent or the Indian
custodian or the Indian child's tribe . . . ." Id. § 1911(b) (emphasis added). 

 This case is a SAPCR filed in connection with Tammy's and Douglas's state
court divorce proceedings into which Carol was improperly allowed to intervene. 
The instant proceedings are neither proceedings for the foster care placement of K.C.
nor proceedings for the termination of parental rights to K.C. Therefore, the Indian
Child Welfare Act is inapplicable to this case. See Comanche Indian Tribe v. Hovis,
53 F.3d 298, 302 (10th Cir. 1995), cert. denied, 516 U.S. 916, 116 S. Ct. 306 (1995)
("[T]he ICWA does not apply to 'child custody proceedings' pursuant to divorce
proceedings."); DeMent v. Oglala Sioux Tribal Court, 874 F.2d 510, 514 (8th Cir.
1989) (same). (24) 

 The only proper factors for the trial court to consider in determining the best
interest of K.C. are those applicable in a SAPCR attendant on divorce proceedings
under the Texas Family Code, not factors applicable to cases for termination of
parental rights and placement in foster care brought under the Indian Child Welfare
Act. Carol's contention that the promotion of the preservation of Indian culture
should be considered as a factor in determining the best interest of an Indian child in
a SAPCR attendant on the state court divorce proceedings of her natural parents is
without merit. (25)

 I would hold that Carol failed to establish standing to seek either temporary or
permanent managing conservatorship of K.C. and that she failed to establish any
immediate right to possession of K.C., any right to custody of K.C., or any parental
rights to K.C. The trial court lacked jurisdiction to remove K.C. from Tammy's
immediate possession to Carol's, to remove Tammy as sole temporary managing
conservator of K.C., and to appoint Carol permanent managing conservator of K.C.;
its temporary orders issued in connection with possession and custody of K.C. were
invalid; and its judgment naming Carol permanent managing conservator of K.C. was
void. See Texas Ass'n of Bus., 852 S.W.2d at 444; Whatley, 649 S.W.2d at 300; In
re C.M.C., 192 S.W.3d at 869. When a trial court lacks subject matter jurisdiction
over a suit, the proper remedy is dismissal. See Am. Motorists Ins. Co., 63 S.W.3d
at 805; In re C.M.C., 192 S.W.3d at 870. 



 Conclusion


 K.C. is now six and a half years old. She has been kept from her mother by
invalid and unconstitutional state court orders since she was fifteen months old. Her
saga is not over. I would withdraw our November 22, 2006 opinion and substitute
this opinion. I would reverse the judgment of the trial court and render judgment that
the appointment of Carol Whitworth as sole managing conservator of K.C. is void and
that Carol Whitworth is dismissed from these proceedings, and I would remand this
case to the trial court with instructions to reinstate Tammy Whitworth as sole
managing conservator of K.C. and to conduct any such other and further proceedings
as may be necessitated by this opinion.





 Evelyn V. Keyes

 Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.


Justice Keyes, dissenting.


1. Tex. R. App. P. 47.1.
2. Carol filed two timely motions for extension of time to file her Motion for Rehearing. 
I would grant the first motion and deny the second as mooted by her filing of the
Motion.
3. Tammy has two other children, A.C. and J.C., who are from different fathers. 
4. Tammy testified at the divorce hearing that the associate judge found her in contempt
because she did not have legal representation to present her side of the case. 
5. Although the parties state that the associate judge issued the orders, the temporary
orders were signed and entered as orders of the trial court on October 31, 2002. The
temporary orders are signed by Carol Whitworth and Douglas Whitworth, but not by
Tammy Whitworth. Docket sheets reflect that a motion to recuse the associate judge
was filed and denied. 
6. Douglas is one-half Native American.
7. Tammy was apparently taking photographs of K.C. to substantiate her allegations that
she was being sexually abused by Douglas and that K.C. had sores from being
neglected by Carol.
8. Children's Protective Services
9. The report records a telephone conversation with A.C.'s psychologist, Jane Markley,
to whom Tammy and A.C. had been referred by CPS, in which Markley "stated that
[A.C.] told her that Doug touched her tee tee and, in another session, [A.C.] said that
he touched her tee tee in the blue car"; A.C. had not wanted to talk in more detail and
in general seemed to be well cared for and happy. The report also records Tammy's
relation of specific instances of spousal abuse and of several specific detailed
instances of sexual abuse of A.C. by Douglas.
10. There was substantial evidence in Dr. Silverman's report of Douglas's spousal abuse,
violent behavior, and alcoholism. In addition, the report records an interview with
Renee Ramirez, Douglas's former girlfriend, who reported that "[A.C.] might have
been molested" but "she does not really know the facts"; that Carol's house was
"gross" and "never really clean," and that "there were holes in the walls all over the
house as a result of Eric [Douglas's brother] losing his temper and punching holes in
the wall."
11. The docket sheets reflect that the motion for new trial was denied on July 21, 2004. 
12. Douglas is one-half Indian and K.C. one-quarter Indian. As an enrolled member of
the Coushatta Tribe, K.C. is entitled to substantial benefits.
13. On October 3, 2006, we asked the parties to file supplemental briefs addressing
standing and both did. After we issued our November 22, 2006 opinion dismissing
Carol from this suit for lack of standing, Carol moved for rehearing, raising additional
arguments regarding her standing and the proper standard of proof of the best interest
of K.C. We address those issues in this revised opinion.
14. Section 102.003 provides general standing to file an original suit affecting the
parent-child relationship (SAPCR). Tex. Fam. Code Ann. § 102.003 (Vernon Supp.
2006). Subsection 102.003(13) grants standing to relatives of the child within the
third degree to seek conservatorship, possession, or access if the child's parents are
both deceased at the time the petition is filed. Id. § 102.003(13). Carol did not allege
that she had standing to intervene under section 102.003(13) or any other provision
of section 102.003.
15. In her supplemental briefing, Carol argued that former section 102.004(a)(1) granted
her standing, but she cited no evidence of a serious question concerning the physical
health or welfare of K.C. at the time the trial court allowed her to intervene. 
16. Section 102.004 was again amended in 1999, but the only change was to rewrite the
introductory paragraph to read, "In addition to the general standing to file suit
provided by Section 102.003(13), a grandparent may file an original suit requesting
managing conservatorship if there is satisfactory proof to the court that . . . ." See
Tex. Fam. Code Ann. § 102.004(a). The prior introductory paragraph read, "An
original suit requesting managing conservatorship may be filed by a grandparent if
there is satisfactory proof to the court that . . . ." Act of June 18, 1999, 76th Leg.,
R.S., ch. 1, § 2, 1999 Tex. Gen. Laws 3877, 3878. Thus, the 1999 amendment is
inapplicable to the issues in this case.
17. Satisfaction of the substantial past contact requirement was not and is not necessary
for a grandparent to have standing to intervene in an ongoing SAPCR when the
grandparent has standing to maintain an original suit in her own right. See Chavez v.
Chavez, 148 S.W.3d 449, 456 (Tex. App.--El Paso 2004, no pet.). (18)
18. Satisfaction of the substantial past contact requirement is not necessary for a
grandparent's standing to intervene in an ongoing SAPCR when the grandparent has
standing to maintain an original suit in her own right. See Chavez, 148 S.W.3d at 456. 
 (19)
19. Satisfaction of the substantial past contact requirement is not necessary for a
grandparent's standing to intervene in an ongoing SAPCR when the grandparent has
standing to maintain an original suit in her own right. See Chavez, 148 S.W.3d at 456. 
 (20)
20. Satisfaction of the substantial past contact requirement is not necessary for a
grandparent's standing to intervene in an ongoing SAPCR when the grandparent has
standing to maintain an original suit in her own right. See Chavez, 148 S.W.3d at 456. 
 
21. McCord states that "grandparents who intervene in a proceeding are not required to
plead and prove the requirements of § 11.03(b)." McCord v. Watts, 777 S.W.2d 809, 
812 (Tex. App.--Austin 1989, no writ). Section 11.03(b) is the predecessor to section
102.004(a), which states the requirements of standing to bring an original suit, not to
section 102.004(b). At the time McCord was decided there was no statutory provision
regarding standing to intervene in a SAPCR. Thus McCord is properly construed as
holding only that grandparents do not have to satisfy the requirements for bringing an
original SAPCR to be allowed to intervene in an ongoing SAPCR. Under the Code
Construction Act, the requirements of section 102.004(b) supersede any inconsistent
prior holding in McCord. See Tex. Gov't Code Ann. §§ 311.025, 311.026 (Vernon
2005).
22. See Tex. R. App. P. 47.1 (requiring appellate court to address issues raised by
pleadings and necessary to final disposition of appeal).
23. The presumption in section 153.131(a) is subject to section 153.004 of the Code,
which requires that, "[i]n determining whether to appoint a party as a sole or joint
managing conservator, the court shall consider evidence of the intentional use of
abusive physical force by a party against the party's spouse, a parent of the child, or
any person younger than 18 years of age committed within a two-year period
preceding the filing of the suit or during the pendency of the suit." Tex. Fam. Code
Ann. § 153.004 (Vernon 2002 and Supp. 2006). The court must consider credible
evidence "of a history or pattern of past or present child neglect, or physical or sexual
abuse by one parent directed against the other parent, a spouse, or a child." Id. §
153.004(b) (Vernon Supp. 2006).
24. O
n December 19, 2003, Carol filed a motion under the Indian Child Welfare Act, 25
U.S.C. § 1911, to sever custodial proceedings from the divorce proceedings and to
transfer jurisdiction to the Coushatta tribe on the ground that K.C. was one-fourth
Coushatta. See 25 U.S.C. § 1911(b) (entitled "Transfer of proceedings; declination
by tribal court"). On March 19, 2004, the trial court denied Carol's motion to sever
because of Tammy's exercise of her parental veto and held that it would retain
jurisdiction. Likewise, the Coushatta tribe moved to intervene under the Act, and the
trial court permitted the intervention. The trial court erred in entertaining these
motions since it had no subject matter jurisdiction under the Indian Child Welfare
Act. 
25. I note that Tammy testified in the divorce proceedings that she had never tried to
disenroll K.C. as a Coushatta tribe member, as Carol alleged; she tried only to transfer
her membership to the Livingston tribe in Texas from the Louisiana Tribe, which was
a decision Tammy, as K.C.'s mother, had the constitutional right to make.